[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 188.]

BURGER, APPELLEE, *v.* CITY OF CLEVELAND HEIGHTS, APPELLANT, ET AL.

[Cite as *Burger v. Cleveland Hts.*, 1999-Ohio-319.]

*Tort reform—Am.Sub.H.B. No. 350—Appellate procedure—Final appealable orders—Sovereign immunity—Amendment to R.C. 2501.02 and newly enacted R.C. 2744.02(C)—Judgment of court of appeals affirmed on authority of State ex rel. Ohio Academy of Trial Lawyers v. Sheward.*

(No. 97-1870—Submitted September 29, 1998—Resubmitted August 25, 1999—Decided November 17, 1999.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 72675.

————————————

*Javitch, Block, Eisen & Rathbone* and *Michael D. Linn*, for appellee.

*John H. Gibbon,* Director of Law, and *Laure A. Wagner*, First Assistant Director of Law, for appellant.

*McDonald, Hopkins, Burke & Haber Co., L.P.A.,* and *Thomas C. Schrader*, for Payto Architects, Inc.

*McCarthy, Palmer, Volkema, Boyd & Thomas* and *Michael S. Miller*, urging affirmance for *amicus curiae* Ohio Academy of Trial Lawyers.

*Walter & Haverfield, P.L.L.,* and *R. Todd Hunt*, urging reversal for *amici curiae* Ohio Township Association and Cuyahoga County Law Directors Association.

*John E. Gotherman* and *Malcolm C. Douglas*, urging reversal for *amici curiae* Ohio Municipal League, Ohio Municipal Attorneys Association and County Commissioners Association of Ohio.

————————————

**{¶ 1}** The judgment of the court of appeals dismissing the appeal for lack of a final appealable order is affirmed on the authority of *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062.

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS and RESNICK, JJ., concur separately.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**DOUGLAS, J., concurring.**

**{¶ 2}** I concur with the majority in affirming the judgment of the court of appeals. I write separately to comment on the jurisdiction question arising out of *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, which has been distorted beyond recognition by some of the print media, the dissents in *Sheward,* and the dissents herein. Notwithstanding incessant pounding, the justices making up the majority in *Sheward* have remained silent, letting the opinion speak for itself. It is now time for that silence on the jurisdiction question to be broken. In doing so I am guided by the words of Henri Frédérick Amiel (1821-1881), a nineteenth century Swiss poet and philosopher, who once said: "Truth is not only violated by falsehood; it may be equally outraged by silence." The International Dictionary of Thoughts (1969) 734.

I

A

Jurisdiction

**{¶ 3}** The lead dissent herein states, "In view of irregularities in the assumption of jurisdiction * * * I cannot agree that *Sheward* should control the outcome of this case." The other dissent says that "*Sheward* should never have been accepted as an original action." Based on clear precedent, the dissenters and

other like critics are in error. Given these statements and a number of others in the printed media, it is time for the silent majority to break its silence.

B

Precedent

**{¶ 4}** The main complaint seems to be that this court should not have accepted jurisdiction over a case that seemed to seek a declaratory judgment as to the constitutionality of a legislative enactment. That argument, of course, misses the point that *Sheward* was an action seeking writs of prohibition and mandamus, over which this court has original jurisdiction. Section 2(B)(1), Article IV, Ohio Constitution. Where extraordinary circumstances exist and declaratory judgment might not (as it would not on all the issues raised in *Sheward*) provide an adequate remedy in the ordinary course of law, "the constitutionality of a statute may * * * be challenged by mandamus." *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 341, 673 N.E.2d 1351, 1354. This is not new law invented by the *Sheward* majority for nefarious purposes as seemingly alleged in some quarters. As long ago as 1956, over forty years ago, this court held, in *State ex rel. Michaels v. Morse* (1956), 165 Ohio St. 599, 608, 60 O.O. 531, 536, 138 N.E.2d 660, 666, that "[t]he right of relator to question, by mandamus, the constitutionality of [a] statute is recognized in Ohio." While *Purdy* was an election case, *Morse* was not, and there are a number of other examples.

**{¶ 5}** *State ex rel. Pub. Institutional Bldg. Auth. v. Griffith* (1939), 135 Ohio St. 604, 14 O.O. 533, 22 N.E.2d 200, was an original action in mandamus filed in this court. The General Assembly had created the Public Institutional Building Authority, and the authority sought to issue bonds to raise revenue to support some of its projects. The Secretary of State refused to attest the bonds, and the authority brought suit—an original action in this court seeking mandamus—to require the Secretary of State to sign the bonds and attest them. The court said that the sole issue before the court was whether the enactments of the General Assembly

violated the constitutional prohibition against the creation of public debt beyond a stated limit. The question was answered by saying that "[t]he court also holds that Sections 2332-3*a*, 2332-4 and 2332-5, of the General Code, are unconstitutional and void * * *." *Id.* at 623, 14 O.O. at 541, 22 N.E.2d at 208. Clearly, the case was an original action, was filed in this court, sought a writ of mandamus, and involved a declaration as to the constitutionality of a legislative enactment.

{¶ 6} *State ex rel. State Bridge Comm. of Ohio v. Griffith* (1940), 136 Ohio St. 334, 16 O.O. 467, 25 N.E.2d 847, was an original action in this court, mandamus was sought, and the issue was the constitutionality of certain statutes. The court held that "it is clear that no constitutional provisions are violated in the issuance of these refunding bonds, and the writ will be granted." *Id.* at 339, 16 O.O. at 469, 25 N.E.2d at 850. Yet again a declaration as to the constitutionality of a legislative enactment.

{¶ 7} Then in 1951, this court entertained an original action in mandamus seeking a declaration that the Act creating the Ohio Turnpike did not contravene several provisions of the Ohio Constitution. The Auditor of State was the respondent, and the court stated that "[t]he auditor contends that the turnpike act is unconstitutional because it purports to authorize the appropriation of private property for the construction of roads or turnpikes upon which tolls are to be charged in violation of Section 19 of Article I of the Constitution." *State ex rel. Allen v. Ferguson* (1951), 155 Ohio St. 26, 35, 44 O.O. 63, 67, 97 N.E.2d 660, 666. After analysis the court then said, "It follows that, even if these portions of the act are unconstitutional, the remaining portions must be sustained." *Id.* at 45, 44 O.O. at 71, 97 N.E.2d at 670. Once more we have an original action in this court seeking mandamus and a declaration of constitutionality. Obviously, original actions in this court in mandamus seeking a declaration of constitutionality or unconstitutionality are not new, unknown, or unheard of, as some would have us believe. But there is more.

**{¶ 8}** In 1981, a relator brought an original action in this court seeking an order compelling respondent, the Treasurer of State, to issue certain bonds pursuant to R.C. Chapter 166. By way of affirmative defense, the Treasurer asserted that R.C. Chapter 166 violated Section 13, Article VIII of the Ohio Constitution. The court said, "We find that respondent has failed to meet this burden *and hold* that R.C. Chapter 166 complies with Section 13, Article VIII of the Ohio Constitution." (Emphasis added.) *Duerk v. Donahey* (1981), 67 Ohio St.2d 216, 219, 21 O.O.3d 135, 138, 423 N.E.2d 429, 432. Clearly, a declaration of constitutionality of a statute, and a writ was granted.

**{¶ 9}** In August 1987, after both Chief Justice Moyer and I had become members of this court, the Director of Budget and Management brought an original action in this court seeking a writ of mandamus. In *State ex rel. Shkurti v. Withrow* (1987), 32 Ohio St.3d 424, 513 N.E.2d 1332, the issue presented was whether R.C. 4141.251 and 4141.48 were constitutional. R.C. 4141.48 directed the Treasurer of State to issue bonds to repay outstanding advances made by the federal government to the Ohio unemployment compensation program. R.C. 4141.251 provided for a surcharge on employer contributions to pay the bond service charges.

**{¶ 10}** The director determined that issuance of the bonds ($315,400,000) would be cost-effective. However, the Treasurer refused to issue the bonds, citing provisions of the Ohio Constitution and previous decisions of this court prohibiting the incurrence of indebtedness. The director brought an original action in mandamus *in this court* to compel the Treasurer to issue the bonds. After considering the director's arguments, a majority of the court said that "[w]e reject both of these contentions and find that the proposed bond issuance would violate Sections 1 and 3 of Article VIII of the Ohio Constitution." *Id.* at 425, 513 N.E.2d at 1334. Again, an original action in this court seeking a writ of mandamus and a declaration of unconstitutionality.

**{¶ 11}** Other language from *Shkurti* is instructive. The court also said that "[w]hile the relator is correct about the deference this court owes to legislative acts, his reliance on the statute's declaration is misplaced. Such reliance *would make the General Assembly and not this court* the final and conclusive authority of the constitutional debt question. *The interpretation of the Ohio Constitution is, however, not a legislative but a judicial question, which ultimately this court must decide.*" (Emphasis added.) *Id*. at 429, 513 N.E.2d at 1337. Some might say that this sounds strangely like the opinion of Justice Resnick and the majority of this court in *Sheward.*

**{¶ 12}** In the final example from this nonexhaustive selection, in 1994, with five of the present seven members of this court present and participating, we accepted jurisdiction and decided *State ex rel. Ohio AFL-CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 631 N.E.2d 582. *Voinovich* was a case brought in mandamus, prohibition, and quo warranto. Three cases were consolidated for decision. All of the cases involved the biennial appropriations for the Bureau of Workers' Compensation and the Industrial Commission.

**{¶ 13}** Case No. 93-2057 sought a writ of prohibition to prevent new commissioners of the Industrial Commission, authorized pursuant to Am.Sub.H.B. No. 107, from acting or hearing cases as the Industrial Commission.

**{¶ 14}** Case No. 93-2059, an action in mandamus and quo warranto, sought an order that the relator was the rightful public member of the Industrial Commission.

**{¶ 15}** In case No. 93-2060, the relators sought a writ of mandamus compelling the bureau and the commission *not* to implement the nonappropriation provisions of 1993 Am.Sub.H.B. No. 107 and to require the processing of claims under the old law.

1

*Voinovich* Majority Opinion

**{¶ 16}** Justice Wright, as author of the majority opinion, commenced his discussion by saying: "[T]hese three cases challenge the constitutionality of Am.Sub.H.B. No. 107 of the 120th Ohio General Assembly. The cases present the following constitutional issues: (1) whether Am.Sub.H.B. No. 107 violates the one-subject rule of Section 15(D), Article II of the Ohio Constitution; (2) whether the bill violates the three-consideration provision of Section 15(C), Article II of the Ohio Constitution; (3) whether the bill denies the citizens of this state their right to a referendum under Section 1, Article II of the Ohio Constitution; and (4) whether abolishing the old Industrial Commission and creating a new one deprives the former commission members of their positions without due process of law and violates the constitutional doctrine of separation of powers. Case No. 93-2059 presents the further question of whether the Governor violated former R.C. 4121.02(E) by failing to grant relator Geltzer an annual salary increase of five percent." 69 Ohio St.3d at 228, 631 N.E.2d at 585-586.

**{¶ 17}** Five members of the court, Chief Justice Moyer,[1] Justice Douglas, Justice Wright, Justice Resnick, and Justice Pfeifer, concurred in the *Voinovich* majority opinion.

**{¶ 18}** Justice Wright, with the concurrence of the aforementioned justices, made a number of points interesting for our purposes here:

(1) "On October 15, 1993, relators filed the following three *original actions in this court,* all of which *make various challenges to the constitutionality* of Am.Sub.H.B. No. 107." (Emphasis added.) *Id.* at 226, 631 N.E.2d at 585.

(2) "Case No. 93-2057 is an original action in mandamus and prohibition filed by *the Ohio AFL-CIO, a citizen taxpayer,* and a board member * * *. Relators seek a writ of *mandamus * * * declaring* the nonappropriations provisions

---

1. Chief Justice Moyer concurred in part and dissented in part but agreed that all of the constitutional issues were properly presented for decision.

*unconstitutional and void.* Relators [also] seek a writ of *prohibition* * * *." (Emphasis added.) *Id.* at 226-227, 631 N.E.2d at 585.

(3) "Relator asks this court to * * * (2) find that Am.Sub.H.B. No. 107 is *void* because it violates the three-consideration provision of Section 15(C), Article II of the *Ohio Constitution.* Relator seeks a writ of *mandamus* * * *." (Emphasis added.) *Id.* at 227, 631 N.E.2d at 585.

(4) "Relators seek a writ of *mandamus* compelling the bureau and the commission not to implement the nonappropriation provisions of Am.Sub.H.B. No. 107 * * *." (Emphasis added.) *Id.* at 227, 631 N.E.2d at 585.

(5) "However, although we are most reluctant to interfere in the legislative process, *we will not* 'abdicate [our] duty to enforce the Ohio Constitution.' " (Emphasis added.) *Id.* at 229, 631 N.E.2d at 586.

(6) "[W]e therefore *hold* that such provision *violates* Section 15(D), Article II of the Ohio Constitution." (Emphasis added.) *Id.* at 230, 631 N.E.2d at 587.

(7) "Likewise, we *determine* that the provisions creating an exemption for the employment of minors *violate* Section 15(D), Article II of *the Ohio Constitution.* * * * We therefore find that the inclusion * * * was an actionable violation * * * of the Ohio Constitution." (Emphasis added.) *Id.* at 230, 631 N.E.2d at 587.

(8) "Having *found* that the intentional tort and child labor exemption provisions * * * *violate* * * * *the Ohio Constitution*,* * * [w]e therefore grant relators' request for a writ of *mandamus* * * *." (Emphasis added.) *Id.* at 230, 631 N.E.2d at 587.

(9) "Relators in all three cases argue * * * violation * * * of the Ohio Constitution." *Id.* at 23l, 631 N.E.2d at 587.

(10) "Relators * * * argue * * * that the enactment * * * *unconstitutionally deprived* the citizens of Ohio of their right of referendum. *We agree* * * *." (Emphasis added.) *Id.* at 234, 631 N.E.2d at 590.

(11) "Thus, we *grant* relators' request for a writ of *mandamus* on the issue of whether Am.Sub.H.B. No 107 *violates * * * the Ohio Constitution.*" (Emphasis added.) *Id.* at 237, 631 N.E.2d at 591.

(12) "We disagree with each of these assertions, and therefore deny relators' requests for writs of mandamus, prohibition and quo warranto with respect to these issues." *Id.* at 237, 631 N.E.2d at 591-592.

2

*Voinovich*—Concurring and Dissenting Opinions

{¶ 19} In his concurring opinion in *Voinovich*, Justice Pfeifer said that "[t]he majority opinion does effectively and pragmatically *resolve* the legitimate *constitutional* concerns raised by relators." (Emphasis added.) *Id.,* 69 Ohio St.3d at 247, 631 N.E.2d at 598.

{¶ 20} In his opinion concurring in part and dissenting in part in *Voinovich*, Chief Justice Moyer said, "I concur in the majority opinion, except that I believe there exists a sufficient common purpose or relationship between the child labor exemption provision of R.C. 4109.06, the workplace intentional tort provision of R.C. 2745.01 and the balance of Am.Sub.H.B. No. 107. Therefore, these provisions should also be upheld." *Id.* at 248, 631 N.E.2d at 599. This is clearly a declaration of constitutionality of a legislative Act in an original action in this court.

{¶ 21} In his opinion concurring in part and dissenting in part in *Voinovich*, Justice A. William Sweeney said that "the 1993 enactment of Am.Sub.H.B. No. 107 *clearly* violates the one-subject rule of the Ohio Constitution * * *." (Emphasis *sic.*) *Id.* at 249, 631 N.E.2d at 599-600. Again, an unambiguous declaration as to constitutionality of a legislative Act and determined in an original action in this court.

{¶ 22} In his opinion dissenting in part and concurring in part in *Voinovich*, Justice Francis E. Sweeney said, "Because I believe that the 1993 enactment of Am.Sub.H.B. No. 107 is unconstitutional, I vigorously dissent from the bulk of the

majority's opinion." 69 Ohio St.3d at 250, 631 N.E.2d at 601. There can be no question that Justice Sweeney, along with the rest of the court, was giving a declaration of constitutionality of a legislative Act pursuant to an original action filed in this court.

{¶ 23} Moreover, in *Voinovich*, many of our same detractors with regard to *Sheward* in general, and the jurisdiction issue in *Sheward* in particular, the Ohio Manufacturers Association, Ohio Self-Insurers Association, Ohio Council of Retail Merchants, Ohio Chamber of Commerce, National Federation of Independent Business, Ohio Farm Bureau Federation, Ohio Business Roundtable, and Council of Smaller Enterprises, appeared and participated before this court as *amici curiae*. At no time did any of them question the court's taking jurisdiction of an original action in this court seeking writs of mandamus, prohibition, and quo warranto and a declaration as to the constitutionality of an Act of the General Assembly. In fact, in their joint brief filed on December 2, 1993, in *Voinovich*, these *amici* said, "The *constitutionality* of Am.Sub.House Bill 107 *should be affirmed*, and the requests for writs of mandamus, prohibition and quo warranto should be denied by this Court." (Emphasis added.)

{¶ 24} Why did they not question this court's taking jurisdiction in *Voinovich*? Only they could answer, but it is not unreasonable to assume that they conceded that we had jurisdiction or, alternately, that their interests and those of their constituent members required a favorable and rapid declaration as to the constitutionality of legislation (premium credits and refunds) that has proven to be very beneficial to them—certainly a legitimate interest.

{¶ 25} Accordingly, based upon a legion of precedents, jurisdiction in *Sheward* was properly vested in this court. To continue to play the tired and worn-out tune of "judicial activism" in opposing jurisdiction is, at best, misleading.

II

Original Jurisdiction of the Ohio Supreme Court Pursuant to Ohio Constitution
Article IV, Section 2(B)(1)(f)

{¶ 26} Section 2, Article IV of the Ohio Constitution establishes the Supreme Court. Subsection (B) of Section 2 defines the court's jurisdiction and is further divided into Subsections 1 and 2. Subsection (B)(1) is further divided into Subsections (a) through (g). Subsection (B)(2) is further divided into Subsections (a) through (f).

{¶ 27} Subsection (B)(1) establishes the *original* jurisdiction of this court. Subsection (B)(2) provides for the *appellate* jurisdiction of this court.

{¶ 28} Section 2(B)(1)(f), Article IV, Ohio Constitution provides that "[t]he supreme court shall have original jurisdiction in the following: * * * (f) In any cause on review as may be necessary to its complete determination." While the phrase "any cause on review" will sound to some, I am sure, like language of appellate jurisdiction, it is clearly not so. Had the drafters meant the subsection to apply to the appellate jurisdiction of this court, it would have been easy enough to so provide. All that would have been needed was to drop down five or so lines and place the provision in Section (B)(2) – the appellate jurisdiction section. Since this was not done, the section obviously pertains to the court's original jurisdiction.

{¶ 29} That having been established, what then does Subsection (f) mean?

{¶ 30} As recently as 1994, Chief Justice Moyer, writing for a unanimous court in *State v. Steffen* (1994), 70 Ohio St.3d 399, 407, 639 N.E.2d 67, 74, said:

"The relief requested by the state is unprecedented and extraordinary. The reasons to grant the relief are compelling. We can and do hereby grant that relief to the extent allowed by the Constitution and statutes of Ohio.

"Section 2(B)(1)(f), Article IV of the Constitution of Ohio grants original jurisdiction to this court '[i]n any cause on review as may be necessary to its complete determination.' We have interpreted this provision to authorize judgments in this court that are necessary to achieve closure and complete relief in

actions pending before the court. We conclude * * * that Section 2(B)(1)(f), Article IV of the Ohio Constitution authorizes this court to enter such judgments in causes it hears on review as are necessary to provide a complete and final determination thereof.

"We have exercised our original jurisdiction conferred by Section 2(B)(1), Article IV to prevent the abuse of the trial and appellate courts by repeated and vexatious lawsuits. * * * We emphasized that prohibition was a writ to be used with great caution and only in the presence of extraordinary circumstances." (Citations omitted.)

{¶ 31} All of the above could have been written as pertaining to jurisdiction in *Sheward*. In fact, and again, that which was written in *Steffen* sounds strangely like *Sheward* and Justice Resnick's opinion.

{¶ 32} The morass of the thousands of cases affected by the Act in question needed to be cleared once and for all by the court's action in *Sheward*. Comments on the need for finality in another context are relevant here: "A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands. * * * There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility." Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners (1963), 76 Harv.L.Rev. 441, 452-453. In addition, the author comments that "[s]urely the answer runs, in the first place, in terms of conservation of resources—* * * not only simple economic resources, but all of the intellectual, moral, and political resources involved in the legal system. The presumption must be * * * that if a job can be well done once, it should not be done twice. * * * Why should we duplicate effort?" *Id*. at 451.

{¶ 33} The issues involved in *Sheward* cried out for closure and complete relief; the relief sought was unprecedented and extraordinary. The tests set forth in *Steffen* for exercising jurisdiction pursuant to Section 2(B)(1)(f), Article IV, Ohio Constitution were met, and the reasons to grant the relief were compelling.

{¶ 34} The history of Subsection (f) reinforces this interpretation. By joint resolution adopted March 1, 1968, the General Assembly submitted to the electors a proposition to amend the Ohio Constitution at an election held May 1968. Included in that submission, presumably read and understood by the legislators, was the language in Subsection (f). The proposal received a favorable vote of the electorate and Subsection (f) became a part of the Constitution of Ohio, the supreme law of our state.

{¶ 35} The analysis of the resolution by the Legislative Services Commission stated that "[t]he jurisdiction of the Supreme court is augmented * * *." Ohio Legislative Service Commission Bill Analysis: Sub.H.J.R 42 (1968). "Augment" is defined as "to enlarge or increase esp. in size, amount, or degree." Webster's Third New International Dictionary (1986) 143. The report of the commission and this definition speak for themselves, but clearly the new language in the court's original jurisdiction section had to be intended to mean something. The next fact makes it even clearer.

{¶ 36} The drafters and the members of the General Assembly (and ultimately the electors) used the word "cause" in Subsection (f). In contrast, the word "case" is used, six times, in the appellate jurisdiction section. The difference, I believe, was quite intentional. It was recognized that in our more modern, fastmoving, and technological world, long waits for judgments in "causes" involving unprecedented and extraordinary matters needing closure and complete relief could bring about personal, professional, and business disasters before any meaningful and/or effective relief would be granted. For example, the reforms at issue in *Voinovich* were brought directly to this court to help eliminate problems in

a workers' compensation system that had been called the "silent killer of jobs." The final decision in that "cause," rendered in a relatively short period of time, made clear that the new procedures urged by the Governor and enacted by the General Assembly were, for the most part, constitutional and could stay in full force and effect, and no person, including some current members of this court, ever raised the question of this court's assuming jurisdiction over the cause.

{¶ 37} Thus, the use of the word "cases" indicates the routine way in which matters come before this court. Use of the word "cause" is broader and can include the extraordinary and unprecedented. Therefore, it is also clear why, in Section 2(B)(3), we find that "[n]o law shall be passed or rule made whereby any person shall be prevented from invoking the original jurisdiction of the supreme court."

{¶ 38} Accordingly, in those causes where four or more members of this court (and at any particular point in time—not just the current court) agree that the matters to be resolved are unprecedented and extraordinary and are in need of closure and complete determination and relief, Section 2(B)(1)(f), Article IV, Ohio Constitution is there and available for use. To find otherwise would be to thwart the will of the General Assembly, the body that proposed the language in question, and the will of the electorate of Ohio, which adopted, by way of amendment to our Constitution, the language in question, and would read right out of the Constitution Subsection (f) of Section 2(B)(1), Article IV, Ohio Constitution. Obviously, each of us should give deference to all sections of the Constitution—not just those with which we agree at any given moment.

{¶ 39} Thus, considering all of the foregoing, the cause *was* properly before us as an original action, there were no irregularities in the assumption of jurisdiction, and we have not "thrown out the baby with the bath water," but, instead, with Justice Resnick's opinion we have remained true to our oath to uphold the Constitution of the State of Ohio. I respectfully concur.

RESNICK, J., concurs in the foregoing concurring opinion.

14

_____

**MOYER, C.J., dissenting.**

{¶ 40} I disagree with the decision of the majority, which affirms the judgment of the court of appeals on the authority of *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062. The parties in this case did not challenge the constitutionality of Am.Sub.H.B. No. 350, and, therefore, I believe that the case should have been decided on the issue raised. While it is true that if *Sheward* is to be followed in the instant case, the question whether R.C. 2744.02(C) as amended by Am.Sub.H.B. No. 350 should be applied retroactively to the instant case would be rendered moot, I would not want a vote of concurrence in this case to in any way suggest that I believe *Sheward* should necessarily be followed by this court in the future. Therefore, I dissent.

{¶ 41} It is not unusual for this court to summarily decide pending cases that raise legal issues dependent on those recently decided by the court in another case. It has been my past practice in such circumstances to follow the law announced in the earlier case, even where I dissented from the decision of the majority in that earlier case. My reason is based on my belief that once this court announces its opinion on an issue of law, that principle of law should be applied consistently to all persons similarly situated, whether or not I agree with that principle.

{¶ 42} Regrettably, I am compelled to make an exception to that practice in this case. In view of irregularities in the assumption of jurisdiction and the inclusion of inappropriate references to the conduct of the General Assembly in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, as is more fully described in my dissent therein, I cannot agree that *Sheward* should control the outcome of this case.

COOK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 43} I continue to disagree with the majority's decision in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062, upon which the majority relies herein in affirming the appellate court's dismissal of the city of Cleveland Heights' appeal. Thus, I join in Chief Justice Moyer's dissent and agree that *Sheward* should never have been accepted as an original action. I also reiterate my belief that 1996 Am.Sub.H.B. No. 350, including the amendments made to R.C. 2744.02(C) and 2501.02, at issue in this case, addresses the single subject of tort reform.

{¶ 44} *Burger* was fully briefed and argued before this court, and, as Chief Justice Moyer indicates, neither party challenged the constitutionality of Am.Sub.H.B. No. 350. Nor were any other constitutional issues raised. The only issue in *Burger* is whether R.C. 2744.02(C) and 2501.02, which allow for an immediate appeal of an order denying political subdivisions immunity pursuant to R.C. Chapter 2744, apply to orders that are issued after those statutes went into effect in cases that were filed prior to the effective date. Clearly, this procedural issue pertaining to the timing of appeals was within the province of the General Assembly to decide.

{¶ 45} But rather than addressing this issue, this court has summarily discarded the amendments made to R.C. 2744.02(C) and 2501.02 pursuant to *Sheward*. The majority's wholesale dismantling of Am.Sub.H.B. No. 350 under the pretext of a violation of the one-subject rule will preclude this court from individually considering important issues like the one presented in this case. At the very least, R.C. 2744.02(C) and 2501.02, which are clearly related to tort litigation, should have been preserved, while any unconstitutional provisions could have been severed.

**{¶ 46}** By failing to preserve at least these sections, the court has promoted inefficiency in our civil justice system. From a practical perspective, determination of whether a political subdivision is immune from liability is usually pivotal to the ultimate outcome of a lawsuit. Early resolution of the issue of whether a political subdivision is immune from liability pursuant to R.C. Chapter 2744 is beneficial to both of the parties. If the appellate court holds that the political subdivision is immune, the litigation can come to an early end, with the same outcome that otherwise would have been reached only after trial, resulting in a savings to all parties of costs and attorney fees. Alternatively, if the appellate court holds that immunity does *not* apply, that early finding will encourage the political subdivision to settle promptly with the victim rather than pursue a lengthy trial and appeals. Under either scenario, both the plaintiff and the political subdivision may save the time, effort, and expense of a trial and appeal, which could take years.

**{¶ 47}** Without the benefit of immediate appealability of this issue, these cases are more likely to proceed through a lengthy trial, as well as subsequent appeals, only to have the appellate court nullify the holding of the trial court on the issue of immunity. As the General Assembly envisioned, the determination of immunity could be made prior to investing the time, effort, and expense of the courts, attorneys, parties, and witnesses pursuant to amendments made to R.C. 2744.02(C) and 2501.02. Because of this court's wholesale dismantling of Am.Sub.H.B. No. 350, the benefits of the immediate appealability of the denial of immunity to a political subdivision will not be realized, even though neither section was challenged on a constitutional basis by the parties in this case. We have thrown out the baby with the bath water.

**{¶ 48}** For all the aforementioned reasons I respectfully dissent.

COOK, J., concurs in the foregoing dissenting opinion.

––––––––––––––––––