OPINION
{¶ 1} Defendants-appellants/cross-appellees, the Village of Blanchester and Thomas White, appeal a decision of the Clinton County Court of Common Pleas partially granting and partially denying their motion for summary judgment in an action filed by plaintiffs-appellees/cross-appellants, Annette Curry and Barbara Tindle. For the reasons outlined below, we must dismiss both the appeal and the cross-appeal. *Page 2 
 {¶ 2} Appellee, Annette Curry ("Curry"), was hired by the Village of Blanchester ("the Village") in May 1990 to serve as clerk of courts for the Mayor's Court and secretary to the mayor. Over the years, Curry was given additional duties including providing clerical work for the police department, zoning office, and clerk-treasurer's office. Curry also provided cleaning services for the municipal building pursuant to a written contract with the Village executed on May 2, 2003. According to the written agreement, either party could terminate the contract by giving a 30-day notice to the other party.
 {¶ 3} Appellee, Barbara Tindle ("Tindle"), was hired by the Village in early 2002 to serve as deputy clerk for the Mayor's Court. Tindle assisted Curry and also performed clerical and secretarial work for other departments.
 {¶ 4} Appellant, Thomas White ("White"), was elected in November 2003 to serve as mayor of the Village for a term commencing on January 1, 2004. Prior to the commencement of his term, White posted written notices around town holding himself out as mayor and notifying the public that the Mayor's Court would be closed effective January 1, 2004. On January 7, 2004, after taking office, White delivered written notices to appellees stating that they were terminated. White also verbally instructed appellees to leave the premises. When appellees refused, White called the Clinton County Sheriff's Department for assistance. The deputy sheriffs advised appellees that they would be arrested for trespass if they refused to leave. Appellees telephoned their attorney, and then informed the deputies that an arrest would violate their civil rights. After consulting with the prosecutor's office, the deputies left the scene. Appellees were neither arrested nor removed from the premises.
 {¶ 5} On January 8, 2004, the Village Council convened and passed a resolution terminating appellees' positions with the Village. The resolution was read and passed by the Village Council on January 12, 2004 and January 13, 2004, at which time it became effective. *Page 3 
 {¶ 6} Also pertinent to this case, the Village Council adopted a "Comprehensive Personnel Policies and Employee Handbook" by resolution on September 26, 1996. This handbook contains provisions covering procedures for abolishing positions and for layoffs and employee recall. Appellees assert that appellants failed to follow these procedures in terminating their positions or in staffing a new clerical position created by the Village after they were terminated. Appellants aver that appellees were "at will" employees who could be terminated by the Village at any time. Appellants further note that the handbook states that its regulations are guidelines and its provisions are not to be considered a contract. Therefore, appellants conclude, the procedures contained in the handbook did not afford appellees a property interest in their positions.
 {¶ 7} Additionally relevant are Curry's allegations that White made three derogatory comments about her to other people. First, Curry maintains that, during executive session while her raise was being discussed, White stated that her "titties were hanging out and she was wearing short shorts." Second, Curry claims that White declared, in the presence of several people at a local pub, that Curry was "all tits and no brains." Finally, Curry alleges that White told one of the Village police officers that she was having an affair with the Village police chief.
 {¶ 8} On May 18, 2004, appellees filed a complaint against the Village; Mayor White; Vice Mayor Cindy Sutton; Village Council members Madalyn Loftin, John Smith, and Dave Wallace; Loree Smith, wife of councilman John Smith; Lieutenant Brett Prickett of the Clinton County Sheriff's Department; the Clinton County Sheriff's Department; and the Clinton County Commissioners. The complaint asserted 13 claims including wrongful termination, violation of due process, breach of contract, civil conspiracy, and numerous tort claims.
 {¶ 9} On September 29, 2006, appellants moved for summary judgment. On July 20, *Page 4 
2007, the trial court issued an order instructing appellees to file a supplemental brief delineating which of their original claims they intended to pursue against which specific defendants and which claims they intended to dismiss.
 {¶ 10} On August 21, 2007, appellees filed a document entitled "Plaintiffs' List of Viable Surviving Claims and the Designation of Defendants to Each Along With a List of Dismissed Claims" in compliance with the trial court's order. In this document, appellees stated their intent to pursue the following nine claims against appellants: (1) unlawful and/or wrongful discharge; (2) violation of procedural and substantive due process; (3) breach of contract and/or promissory estoppel; (4) invasion of privacy; (5) defamation; (6) intentional infliction of emotional distress; (7) sex/gender discrimination; (8) tortious interference with business or professional relations, and future and/or prospective employment and/or economic opportunities ("tortious interference"); and (9) deprivation of civil rights. This document also stated that appellees were not pursuing four of their original claims.
 {¶ 11} On June 16, 2008, the trial court issued its decision granting appellants' motion for summary judgment in part and denying it in part. The court denied summary judgment to all appellants on appellees' claim for breach of the written cleaning contract. The court also denied summary judgment to White on appellees' claims of invasion of privacy, defamation, and intentional infliction of emotional distress. The trial court elected not to rule on appellees' tortious interference claim at that time. The court granted summary judgment to appellants on the remaining claims in appellees' list. Appellants timely appeal, raising one assignment of error. Appellees cross-appeal, raising two assignments of error.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO WHITE FOR DEFAMATION, INVASION OF PRIVACY AND INTENTIONAL INFLICTION OF *Page 5 
EMOTIONAL DISTRESS."
 {¶ 14} Cross-Assignment of Error No. 1:
 {¶ 15} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING DEFENDANTS SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR WRONGFUL TERMINATION AND VIOLATIONS OF DUE PROCESS RIGHTS."
 {¶ 16} Cross-Assignment of Error No. 2:
 {¶ 17} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING DEFENDANTS SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY."
 {¶ 18} Appellants' single assignment of error protests that the trial court improperly refused to award summary judgment to White on appellees' claims of defamation, invasion of privacy, and intentional infliction of emotional distress. Appellees' two cross-assignments of error challenge the trial court's decision to grant summary judgment to appellants on appellees' wrongful termination and due process claims.
 {¶ 19} This court is required to raise jurisdictional issues sua sponte and dismiss an appeal that is not taken from a final appealable order. Whitaker-Merrell v. Geupel Construction Co. (1972),29 Ohio St.2d 184, 186. Therefore, the threshold issue that we must address is whether a trial court order denying immunity to a political subdivision or its employees under R.C. Chapter 2744 is a final appealable order when the case involves multiple claims and/or multiple parties and some of the claims remain pending and undecided by the trial court.
 {¶ 20} Appellate courts have jurisdiction to review the final orders of inferior courts within their districts. Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2501.02. In order to constitute a final appealable order, a judgment entry must meet the requirements of *Page 6 
R.C. 2505.02 and, if applicable, Civ. R. 54(B). Chef Italiano Corp. v. KentState Univ. (1989), 44 Ohio St.3d 86, syllabus.
 {¶ 21} R.C. 2505.02(B)(1) defines a final appealable order as one "that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]" Typically, when an action involves multiple claims or multiple parties and the lower court's order does not dispose of all the claims against all the parties, absent an express certification under Civ. R. 54(B) that there is "no just reason for delay," the order is not final and appealable. Jarrett v. DaytonOsteopathic Hosp., Inc. (1985), 20 Ohio St.3d 77, syllabus. Under such circumstances, an appellate court may not entertain an appeal on any of the claims and the case must be dismissed for lack of jurisdiction.Dines v. Spurlock (Sept. 19, 1994), Clinton App. No. CA94-02-005, at 3.
 {¶ 22} A case involving the denial of sovereign immunity, however, necessitates further analysis. Under R.C. 2744.02(C), "an order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." Construing this statute, the Ohio Supreme Court held that "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." Hubbell v. Xenia, 115 Ohio St.3d 77, 2007-Ohio-4839, syllabus.
 {¶ 23} The scope of appellate jurisdiction in cases involving the denial of sovereign immunity is limited to whether the trial court erred in denying summary judgment based upon R.C. Chapter 2744 immunity. Cf.Mortensen v. Butler Co. Bd. of Commrs., Butler CA2007-04-088,2008-Ohio-1017, ¶ 15.
 {¶ 24} Before proceeding with our disposition of the case at bar, it is helpful to *Page 7 
examine the rationale behind permitting an appellate court to hear an interlocutory appeal from an order denying sovereign immunity. TheHubbell court noted that "[j]udicial economy is actually better served by a plain reading of R.C. 2744.02(C)," quoting Justice Lundberg Stratton's dissenting opinion in Burger v. Cleveland Hts.,87 Ohio St.3d 188, 199-200, 1999-Ohio-319:
 {¶ 25} "[D]etermination of whether a political subdivision is immune from liability is usually pivotal to the ultimate outcome of a lawsuit. Early resolution of the issue of whether a political subdivision is immune from liability pursuant to R.C. Chapter 2744 is beneficial to both of the parties. If the appellate court holds that the political subdivision is immune, the litigation can come to an early end, with the same outcome that otherwise would have been reached only after trial, resulting in a savings to all parties of costs and attorney fees. Alternatively, if the appellate court holds that immunity doesnot apply, that early finding will encourage the political subdivision to settle promptly with the victim rather than pursue a lengthy trial and appeals. Under either scenario, both the plaintiff and the political subdivision may save the time, effort, and expense of a trial and appeal, which could take years.
 {¶ 26} " * * * As the General Assembly envisioned, the determination of immunity could be made prior to investing the time, effort, and expense of the courts, attorneys, parties, and witnesses pursuant to amendments made to R.C. 2744.02(C) and 2501.02." Hubbell, 2007-Ohio-4839
at ¶ 24-26. (Emphasis sic.)
 {¶ 27} Thus, in furtherance of judicial and fiscal economy in cases involving sovereign immunity, the Hubbell court issued the following mandate:
 {¶ 28} "A court of appeals must exercise jurisdiction over an appeal of a trial court's decision overruling a Civ. R. 56(C) motion for summary judgment in which a political *Page 8 
subdivision or its employee seeks immunity. Absent some other proceduralobstacle, a court of appeals must conduct a de novo review of the law and facts. If, after that review, only questions of law remain, the court of appeals may resolve the appeal. If a genuine issue of material fact remains, the court of appeals can remand the case to the trial court for further development of the facts necessary to resolve the immunity issue." Hubbell at ¶ 21. (Emphasis added.)
 {¶ 29} Although the present appeal involves a trial court's decision overruling a motion for summary judgment in which a political subdivision or its employee sought immunity, there remain several procedural obstacles precluding our review. See id. Specifically, the trial court has yet to fully resolve all of the immunity issues that were raised in appellant's motion for summary judgment.
 {¶ 30} First, the trial court did not determine whether summary judgment should be granted in favor of any of the appellants on appellees' tortious interference claim based on sovereign immunity. Regarding this particular claim, the trial court's June 16, 2008 judgment entry stated:
 {¶ 31} "At this point neither the Defendants nor the Court understand how this claim amounts to something more than would be covered by the Plaintiffs' other claims. In their September 20, 2007 Response the Defendants stated that this claim is still vague and difficult to comprehend. The Court makes no ruling on this `claim' at thistime." (Emphasis added.)
 {¶ 32} Due to the fact that the trial court made no ruling on this claim, we find that a determination as to whether appellants were entitled to summary judgment on the basis of sovereign immunity on appellees' tortious interference claim remains pending before the trial court. *Page 9 
 {¶ 33} Second, the trial court did not determine whether summary judgment should be granted in favor of defendant Dave Wallace, who was one of six defendants who moved for summary judgment in the trial court. As stated, the trial court ordered appellees to narrow down the claims and party defendants to those they intended to pursue. Appellees' subsequent filing detailing the claims they intended to pursue and dismiss did not designate Wallace as a defendant to any of the nine intended surviving claims. It thus appears that the trial court proceeded with its ruling on appellants' motion for summary judgment presuming that Wallace was no longer a party to the action. However, the record does not indicate that Wallace was actually dismissed as a party by the trial court. It is well-settled that a court of record speaks only through its journal. Bokeno v. Bokeno, Butler App. No. CA2001-07-170, 2002-Ohio-3979, ¶ 17. Therefore, we find that a determination as to whether Wallace was entitled to summary judgment on the basis of sovereign immunity remains pending before the trial court.[1]
 {¶ 34} Early resolution of a dispute is beneficial to all parties when sovereign immunity is involved. However, where sovereign immunity issues remain pending, it is not beneficial to the parties, nor does it encourage settlement negotiations, to address these immunity issues in a multiple party or multiple claim lawsuit in a piecemeal fashion. In the interest of judicial and fiscal economy, appeals in which immunity issues remain pending before the trial court must be dismissed by an appellate court and the immunity issues wholly resolved before the *Page 10 
appellate court entertains an appeal under R.C. 2744.02(C).
 {¶ 35} In conclusion, we recognize that R.C. 2744.02(C) permits a case to proceed on appeal solely on the issue of the trial court's denial of summary judgment on sovereign immunity grounds. The trial court's decision in the present matter did not dispose of all the sovereign immunity issues before the court. In order to avoid a piecemeal immunity determination, we must dismiss appellants' appeal pending resolution of all sovereign immunity issues. Due to the pending claims and lack of Civ. R. 54(B) certification in the trial court's decision, we must dismiss also appellees' cross-appeal. Jarrett, 20 Ohio St.3d at syllabus.
 {¶ 36} Appeal and cross-appeal dismissed.
YOUNG, P.J., and RINGLAND, J., concur.
[1] Aside from these two specific procedural obstacles, we observe that there remain potential, unresolved immunity issues that were not raised in this appeal. Appellees' complaint named ten party defendants and listed 13 different causes of action. Appellees' List of Viable Surviving Claims and Dismissed Claims, filed at the trial court's behest, set forth nine claims against seven of the original ten party defendants. It appears that it was the intent of appellees and the trial court to dismiss the claims and parties set forth in appellees' list. However, the record contains no judgment entry officially dismissing any of these claims or the parties associated with them. Due to the fact that the three defendants intended to be dismissed by appellees, Lieutenant Prickett, the Clinton County Sheriff's Department, and the Clinton County Commissioners, are government employees, there are additional, potential sovereign immunity issues that could be raised in a later appeal. We note this issue separately because it was neither raised in appellants' motion for summary judgment nor in the appeal presently before this court. *Page 1