OSSAI–CHARLES, Appellee and Cross–Appellant,

v.

CHARLES, Appellant and Cross–Appellee.

[Cite as *Ossai–Charles v. Charles,* 188 Ohio App.3d 503, 2010-Ohio-3558.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

Nos. CA2010–01–009 and CA2010–02–011.

Decided Aug. 2, 2010.

Moskowitz & Moskowitz and James H. Moskowitz, for appellee and cross-appellant.

Kirkland & Sommers, L.P.A., and James R. Kirkland, for appellant and cross-appellee.

RINGLAND, Judge.

{¶ 1} Defendant-appellant and cross-appellee, Gregory Charles, appeals from an order of the Warren County Court of Common Pleas, Domestic Relations Division, increasing his child- and spousal-support payments, finding him in contempt for failing to comply with the terms of his divorce decree, and ordering him to pay past-due support and a portion of the attorney fees of his former wife, plaintiff-appellee and cross-appellant, Mary Ossai–Charles, who cross-appeals from the same order. We dismiss Gregory's appeal and Mary's cross-appeal for lack of a final, appealable order.

{¶ 2} Under the terms of the parties' 2006 divorce decree, Mary was designated as the legal custodian and residential parent of the parties' two minor children, and Gregory was granted visitation. Gregory was ordered to pay child support in the amount of $1,051.18 per month plus 8.8 percent of any bonus that he received and one-half of the parties' eldest child's private-school tuition. He was also ordered to pay Mary spousal support for five years (or until she remarried or began cohabitating with an unrelated person) in the amount of $2,000 per month plus 30 percent of any bonus that he received.

{¶ 3} On May 22, 2008, the Warren County Child Support Enforcement Agency ("CSEA") issued an administrative decision recommending that Gregory's monthly child-support obligation be reduced to $525.59 since the parties' eldest child had turned 18 years old, was on track to graduate from high school on June 2, 2008, and thus would become emancipated on that date. The CSEA's administrative recommendation triggered the filing of numerous motions by both parties in the Warren County Domestic Relations Court, in which they requested, among other things, a modification of child and spousal support, with Mary requesting an increase, and Gregory, a decrease, in both amounts.

{¶ 4} In August 2009, the magistrate issued a decision increasing Gregory's monthly child- and spousal-support obligations to $691.09 and $3,125, respectively, but terminating his obligation to pay a percentage of his bonuses as additional child and spousal support. The magistrate also found Gregory in contempt for failing to pay the appropriate amount of support on his bonus payments and his share of the parties' eldest child's tuition. The magistrate determined that Gregory owed Mary $11,391.04 in additional child- and spousal-support payments on his bonuses less any payments made by him to date, $1,507.97 in tuition payments, and $6,500 for a portion of her attorney fees. The magistrate concluded by noting that Gregory "may have an arrearage (or an overpayment) with regard to on-going spousal and child support as will be determined by a C.S.E.A. audit."

{¶ 5} In January 2010, the trial court issued what it declared to be a final, appealable order, partially sustaining two of Gregory's objections to the magistrate's decision but overruling the parties' remaining objections and adopting the magistrate's decision, as amended, as its own.

{¶ 6} Gregory appeals, and Mary cross-appeals, from the trial court's order, raising seven assignments of error and five cross-assignments of error. Before addressing the assignments of error, we consider whether the trial court's order was, in fact, a final, appealable order, as the trial court claimed it to be. For the reasons that follow, we conclude that it was not.

{¶ 7} Gregory argues that the trial court erred when it failed or refused to allow the CSEA to perform a new audit of his child- and spousal-support accounts after it misconstrued one of his objections to the magistrate's decision in which he had argued that the magistrate erred by not directing the CSEA to conduct the new audit *before* issuing a decision on the question of arrearages or overages on his support accounts.

{¶ 8} In February 2009, Gregory filed a motion requesting that the CSEA be directed to audit his child-support account to determine the total amount of his overpayments for child support after the parties' eldest child became emancipated. In its August 2009 decision, the magistrate sustained Gregory's motion and

directed the CSEA to conduct a new audit of his child- and spousal-support accounts and to advise the parties of the results. Gregory filed an objection to the magistrate's decision, arguing that the magistrate should have ordered the CSEA to conduct a new audit of his support accounts *before* making any finding against him on the question of arrearages or overages. He also argued that his "overpayment towards support of the [parties'] emancipated child should wipe out any arrearages."

{¶ 9} The trial court overruled Gregory's objection, finding that if Gregory wished to have an audit performed by CSEA, it was his duty to have the audit "performed prior to trial," and since he failed to do so, he was not "entitled to a 'second bite at the apple' after the Magistrate's Decision." The trial court added, "Should the Court allow an audit to be performed at this time, it would make a mockery of the system as no judgment would ever be final," and therefore, the trial court "decline[d] to grant an audit." However, the trial court appears to have overlooked the fact that at least five months before the magistrate issued a decision in this matter, Gregory requested that the CSEA be directed to perform a new audit of his child- and spousal-support accounts; the magistrate sustained that request and directed the CSEA to conduct such an audit. Moreover, when the trial court adopted the magistrate's decision, it implicitly upheld the magistrate's directive to the CSEA to perform a new audit of Gregory's child- and spousal-support accounts, even though the trial court had stated that allowing "an audit to be performed at this time * * * would make a mockery of the system."

{¶ 10} The inconsistency in the trial court's order strongly suggests that the trial court misunderstood Gregory's objection: Gregory was not arguing that the magistrate erred by not directing the CSEA to conduct a new audit of his child- and spousal-support accounts—indeed, the magistrate already had done so in her decision—rather, he was arguing that the magistrate should not have made any decision regarding the issue of arrearages or overages on his support accounts until the CSEA had conducted a new audit of his support accounts.

{¶ 11} Mary contends that the trial court did not prohibit the CSEA from conducting a new audit of Gregory's support accounts, and Gregory has represented in his brief that while this appeal was pending, the CSEA did, in fact, conduct a new audit of his child- and spousal-support accounts. However, the trial court's order creates confusion regarding whether the trial court meant simply to overrule Gregory's objection on the timing of the new audit *or* whether the trial court meant to prohibit, altogether, the CSEA from performing a new audit of Gregory's support accounts.

{¶ 12} Section 3(B)(2), Article IV of the Ohio Constitution grants courts of appeals jurisdiction "as may be provided by law to review and affirm, modify, or reverse judgments or final orders" of the trial courts within their appellate

district. This constitutional provision is implemented, primarily, by R.C. 2505.02, which defines the types of orders that constitute a "final order." If an order appealed from is not final and appealable, a court of appeals has no jurisdiction to rule on the appeal and must dismiss it, sua sponte, even if no party has raised the issue. *Curry v. Blanchester,* Clinton App. Nos. CA2008–07–024 and CA2008–07–028, 2009-Ohio-1649, 2009 WL 903837, ¶ 19.

{¶ 13} The trial court did not cite the Revised Code section under which it found its order to be final and appealable, but it appears that the only categories of final orders listed in R.C. 2505.02(B) that may have relevance to this case are the ones in set forth in R.C. 2505.02(B)(1) and (2), which state:

{¶ 14} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

{¶ 15} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

{¶ 16} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."

{¶ 17} A "[s]ubstantial right" is defined as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or·protect." R.C. 2505.02(A)(1).

{¶ 18} The trial court's order adopting the magistrate's decision that left unresolved the question whether an arrearage or overage exists in Gregory's child- or spousal-support accounts, and if so, its amount, is not a final order under R.C. 2505.02(B)(1) because it is not an order "that in effect determines the action and prevents a judgment." See, e.g., *State ex rel. A & D Ltd. Partnership v. Keefe* (1996), 77 Ohio St.3d 50, 52, 671 N.E.2d 13. The evidence shows that the amount of Gregory's overpayment for child support between June 2, 2008, the date of the parties' eldest child's emancipation, and April 14, 2009, the date of the final hearing held before the magistrate, is significant and could affect such decisions as whether Gregory should be held in contempt for not complying with the trial court's previous support orders, and if so, the sanction that should be imposed against him.

{¶ 19} The trial court's order also does not fall under the category of final orders set forth in R.C. 2505.02(B)(2). Orders issued in postdecree proceedings may be final orders under R.C. 2505.02(B)(2) if they "affect[ ] a substantial right made * * * upon a summary application in an action after judgment." Id. However, an order "affects" a substantial right only if it has "immediate consequences," *Walburn v. Dunlap,* 121 Ohio St.3d 373, 2009-Ohio-1221, 904 N.E.2d 863, ¶ 24, or is one that "if not immediately appealable, would foreclose

appropriate relief in the future." *Southside Community Dev. Corp. v. Levin,* 116 Ohio St.3d 1209, 2007-Ohio-6665, 878 N.E.2d 1048, ¶ 7.

{¶ 20} In this case, the trial court's order does not have immediate consequences because it left undecided the question whether an arrearage or overage exists on Gregory's child- and spousal-support accounts, and if so, its amount. That issue will not be decided until the CSEA conducts a new audit of Gregory's support accounts, because it has been directed to do by the magistrate's decision, which the trial court implicitly affirmed. Moreover, requiring the parties to wait to appeal the decisions made in the trial court's order would not foreclose appropriate relief in the future. Consequently, the order from which Gregory appealed and Mary cross-appealed is not one that affects their "substantial rights," and thus was not a final, appealable order under R.C. 2505.02(B)(2).

{¶ 21} In light of the foregoing, this cause is dismissed for lack of a final, appealable order, and the assignments of error are rendered moot.

Appeal dismissed.

BRESSLER, P.J., and HENDRICKSON, J., concur.