[Cite as *Windsor Realty & Mgt., Inc. v. Northeast Ohio Regional Sewer Dist.*, 2016-Ohio-4865.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103635

---

# WINDSOR REALTY AND MANAGEMENT, INC.

### PLAINTIFF-APPELLEE

### vs.

# NORTHEAST OHIO REGIONAL SEWER DISTRICT, ET AL.

### DEFENDANTS-APPELLANTS

---

### JUDGMENT:
### DISMISSED IN PART; AFFIRMED IN PART; REVERSED IN PART; REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-818605

**BEFORE:** E.A. Gallagher, P.J., Stewart, J. and Celebrezze, J.

**RELEASED AND JOURNALIZED:** July 7, 2016

**ATTORNEYS FOR APPELLANTS CITY OF CLEVELAND AND BARRY WITHERS**

Barbara A. Langhenry
Director of Law
By:  John Mills
Assistant Director of Law
City Hall, Room 106
601 Lakeside Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLANT NORTHEAST OHIO REGIONAL SEWER DISTRICT**

Marlene Sundheimer
Chief Legal Officer and General Counsel
Katarina K. Waag
Assistant General Counsel
Northeast Ohio Regional Sewer District
3900 Euclid Avenue
Cleveland, Ohio 44115

**ATTORNEYS FOR APPELLEE**

Gary L. Lieberman
Darren Dowd
Gary L. Lieberman Co., L.P.A.
30195 Chagrin Blvd., Suite 300
Pepper Pike, Ohio 44124

EILEEN A. GALLAGHER, P.J.:

**{¶1}** Defendants-appellants the Northeast Ohio Regional Sewer District ("NEORSD"), the city of Cleveland (the "city") and Barry Withers (collectively, "appellants") appeal from an order of the trial court denying their motion to dismiss the amended complaint of plaintiff-appellee Windsor Realty and Management, Inc. ("Windsor") pursuant to Civ.R. 12(B)(6). In its amended complaint, Windsor asserts various claims against appellants based on alleged overcharges for water and sewer services provided to Windsor, the city's alleged negligent failure to detect an underground water leak and appellants' failure to honor a settlement agreement Windsor allegedly negotiated with Withers to resolve the overcharges. For the reasons that follow, we dismiss the appeal in part, affirm the trial court's decision in part, reverse the trial court's decision in part, and remand the matter for further proceedings.

**Factual and Procedural Background**

**{¶2}** Windsor manages Pinecrest Apartments, a residential apartment complex consisting of 87 apartment units, in Broadview Heights, Ohio (the "property"). At all relevant times, the city (through its division of water) provided water service to the property and NEORSD provided sewer service to the property. The city and NEORSD invoiced Windsor on a quarterly basis for the water and sewer services provided to the property.

**{¶3}** Beginning in April 2005, Windsor's water and sewer bills for the property increased significantly. At that time, a number of the apartment units were vacant and,

according to Windsor, there had been no increase in usage. Windsor contacted the city and requested that it conduct an inspection of the property to determine if there was an underground water leak. In May 2005, a city representative conducted an inspection of the property and found no leak. Dissatisfied with the results of the city's inspection, Windsor retained its own inspector to conduct an independent inspection of the property. Windsor's inspector discovered an underground leak on the property that Windsor claimed was missed at the city's inspection. Windsor paid $4,000 to repair the leak.

{¶4} In September 2005, Windsor contacted the city, informed the city of the leak and requested an adjustment to its account due to the leak and the city's negligent inspection. Windsor continued to pay the current water and sewer charges billed on its account but did not pay the "delinquent balance," which Windsor claimed was attributable to the underground water leak and the city's negligent inspection of the property. No adjustment was made to its account balance. Windsor made numerous follow up requests for an adjustment of its account balance to no avail.

{¶5} In January 2008, the city replaced the water meter at the property and conducted a "take out read" and a "set read" of the meter. The March 2008 and June 2008 invoices for Windsor's water usage totaled $21,940.58 and $24,505.06, respectively. Windsor disputed these invoices, claiming they were inaccurate, because they greatly exceeded the amounts of its prior invoices. According to Windsor, its historical, average quarterly cost for water usage at the property — excluding the time period of March 2005 through May 2005 — was $9,947.58.

**{¶6}** In response to Windsor's complaints, in July 2008, the city conducted an inspection of the water meter at the property. The invoice Windsor received for the billing cycle following the July 2008 inspection was $8,834.25. Because this figure was consistent with its normal usage, Windsor paid the invoice in full, but continued to dispute the invoices from March and May 2005 as well as the invoices from March and June 2008.

**{¶7}** The city did not respond to Windsor's repeated requests to resolve the billing dispute. Instead, the city sent delinquency notices and water shut off notices, including notices to Windsor's tenants, threatening to shut off the water supply if Windsor did not pay the disputed sums in full. The city also denied Windsor's request for a hearing before the water review board.

**{¶8}** In July 2012, Windsor met with Withers, who was then the city's Director of Utilities, in an attempt to resolve the billing dispute. During the meeting, Windsor and Withers agreed that the city would install a new water meter on the property and monitor it for three billing cycles. At the end of the three billing cycles, the disputed invoices from 2005 and 2008 would be adjusted based on the average of those three billing cycles. In February 2013, the city installed a new water meter on the property and destroyed the old meter. However, the city did not otherwise comply with the alleged settlement agreement. Instead of adjusting the previously disputed invoices based on the next three billing cycles, in December 2013 the city discontinued water service to the property.

{¶9} On December 12, 2013, Windsor filed a complaint against NEORSD and the city for damages and injunctive relief along with a motion for preliminary injunction seeking to compel the city and NEORSD to restore water and sewer service to the property and to enjoin them from discontinuing or interrupting water or sewer service while the action was pending. On December 13, 2013, the trial court granted Windsor's motion for preliminary injunction and entered an order enjoining the city and NEORSD from "discontinuing, stopping, or interrupting water service" to the property. The order was to remain in effect until the lawsuit was resolved. The court further ordered Windsor to deposit $25,000 in escrow with the clerk of courts in lieu of bond. Windsor deposited the required funds in escrow with the clerk of courts that same day.

{¶10} On February 23, 2015, Windsor filed an amended complaint (with leave of court), adding Withers as a defendant. Windsor asserted claims of breach of contract, negligence, negligent misrepresentation and negligent inspection against the city and NEORSD related to their alleged overbilling of Windsor for water and/or sewer services that were not provided to the property, the city's alleged failure to exercise reasonable care in inspecting the property for an underground water leak in 2005 and in communicating information regarding the inspection and leak to Windsor and failure to exercise reasonable care in setting and reading the water meter in 2008. Windsor also asserted a  claim for breach of settlement agreement and promissory estoppel against the city and NEORSD and a claim of negligent misrepresentation against Withers based on representations Withers allegedly made to Windsor during the July 2012 settlement

meeting, Windsor's reliance on those representations and Windsor's belief that the parties had entered into a binding settlement agreement to resolve the disputed balances on Windsor's account. Windsor also asserted a spoliation of evidence claim against the city and NEORSD alleging that the city and NEORSD had willfully destroyed the 2008 water meter with knowledge that litigation related to the billing dispute was "probable."

{¶11} On March 23, 2015, appellants filed a joint motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6). Appellants argued that Windsor's negligence claims were barred by the applicable statute of limitations set forth in R.C. 2744.04(A) and that "[i]ndependent of the statute of limitations," they were immune from liability on Windsor's negligence claims and spoliation claim pursuant to R.C. 2744.02 and 2744.03(A)(6). Appellants also argued that Windsor's claims for breach of contract and breach of settlement agreement "fail[ed] as a matter of law" because Windsor did not have a contract with appellants for water or sewer service and that no enforceable settlement agreement existed under Ohio law. Appellants asserted that the city and NEORSD do not provide water and sewer services to their customers "under contract," but rather, "by authority derived from Article XVIII, section 4 of the Ohio Constitution" and "through the authority of R.C. § 6119 et seq." and that under Ohio law, implied contract theories of recovery do not apply to political subdivisions. Appellants further argued that the city could only enter into a contract in accordance with its city charter and that pursuant to the city charter no binding agreement exists unless and until the city's law director executes and delivers the agreement — which was not alleged to have occurred

here. Finally, appellants argued that Windsor's amended complaint failed to state a claim for promissory estoppel or injunctive relief because (1) there was no allegation in the complaint that NEORSD participated in the settlement discussions or made any representation to Windsor that it would adjust Windsor's water bills, (2) Withers lacked authority to bind the city to a settlement with Windsor and (3) Windsor could not establish irreparable harm or other "essential requirements necessary for the [c]ourt to grant an injunction."

{¶12} Windsor opposed the motion. On September 15, 2015, the trial court denied the motion to dismiss, reasoning that although "the statute of limitations began when the wrongful act was committed," "[t]he overbilling did not result in injury until the services were disconnected." The trial court also indicated that "the dispute at issue involves proprietary governmental functions" and that "defendants had apparent authority to enter into a binding settlement contract with plaintiff."

{¶13} Appellants appealed the trial court's ruling, raising the following seven assignments of error for review:

Assignment of Error No. 1:
The Trial Court erred in failing to dismiss Appellee's count for breach of contract because Appellee does not have an implied contract for water service with the City of Cleveland and does not have an implied contract for water service with the Northeast Ohio Regional Sewer District.

Assignment of Error No. 2:
The Trial Court erred in failing to dismiss Appellee's count for breach of settlement because Appellee does not have an implied settlement agreement with the City of Cleveland and NEORSD.

Assignment of Error No. 3:

The Trial Court erred in failing to dismiss Appellee's count for spoliation of evidence because all Appellants are immune from intentional torts under R.C. 2744.02 and Appellee had not attempted to argue otherwise.

Assignment of Error No. 4:
The Trial Court erred in failing to dismiss Appellee's counts for negligence in favor of the City of Cleveland and NEORSD on the basis of the sovereign immunity provided to the Appellants as political subdivisions by Chapter 2744 of the Ohio Revised Code.

Assignment of Error No. 5:
The Trial Court erred in failing to dismiss tort and negligence counts against Appellant Barry Withers because Withers is immune from Appellee's claims under R.C. 2744.03(A)(6) and Appellee failed to plead otherwise.

Assignment of Error No. 6:
The Trial Court erred in failing to dismiss Appellee's count for promissory estoppel against the City and NEORSD because

> A. the City's Director of Public Utilities lacks the authority under the City of Cleveland Charter to bind the City to an oral agreement; and
>
> B. NEORSD was not alleged to have participated in the alleged conduct.

Assignment of Error No. 7:
The Trial Court erred in granting Appellant's [sic] amended count for injunctive relief without following the mandatory requirements of Civ.R. 65.

For ease of discussion, we address appellants' assignments of error out of order and together where appropriate.

**Law and Analysis**

{¶14} As an initial matter, we must first address this court's jurisdiction to review the assignments of error raised by appellants. An appellate court can review only final,

appealable orders. Without a final, appealable order, an appellate court has no jurisdiction. *See Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9; Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2501.02. An order denying a motion to dismiss is generally not a final, appealable order. *See, e.g., Maclin v. Cleveland*, 8th Dist. Cuyahoga No. 102417, 2015-Ohio-2956, ¶ 9; *DiGiorgio v. Cleveland*, 196 Ohio App.3d 575, 2011-Ohio-5824, 964 N.E.2d 495, ¶ 4 (8th Dist.), citing *Polikoff v. Adam*, 67 Ohio St.3d 100, 103, 616 N.E.2d 213 (1993). However, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." Thus, R.C. 2744.02(C) grants appellate courts jurisdiction to review the denial of a motion to dismiss based upon immunity. *Hubbell* at ¶ 27 ("[W]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and thus is a final, appealable order pursuant to R.C. 2744.02(C)."); *Maclin* at ¶ 9 ("While ordinarily we do not have appellate jurisdiction over the denial of a Civ.R. 12(B)(6) motion to dismiss because such orders are interlocutory in nature, the denial of a motion to dismiss based on political subdivision immunity is a final and appealable order subject to appellate court review."); *DiGiorgio* at ¶ 11, 15 (trial court's order denying municipal defendants' motion to dismiss is a final, appealable order under R.C. 2744.02(C), even if the order does not explain the basis for the court's decision).

**{¶15}** Appellate review under R.C. 2744.02(C) is, however, limited to review of alleged errors involving denial of "the benefit of an alleged immunity from liability"; it does not authorize the appellate court to otherwise review the merits of a trial court's decision to deny a motion to dismiss. *See, e.g., Owens v. Haynes,* 9th Dist. Summit No. 27027, 2014-Ohio-1503, ¶ 8-9; *see also Reinhold v. Univ. Hts.*, 8th Dist. Cuyahoga No. 100270, 2014-Ohio-1837, ¶ 21 ("An appeal from a denial of summary judgment based on sovereign immunity is limited to the review of alleged errors in the portion of the trial court's decision that denied the political subdivision the benefit of immunity."), citing *Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 20; *CAC Bldg. Properties, LLC v. Cleveland*, 8th Dist. Cuyahoga No. 91991, 2009-Ohio-1786, ¶ 9, fn. 1 (appellate court had jurisdiction to review city's appeal only with respect to issues that were based on the trial court's denial of summary judgment on immunity grounds; other issues city raised on appeal with respect to the denial of its summary judgment motion were not reviewable). Thus, when appealing a denial of a motion to dismiss based on immunity under R.C. 2744.02(C), a party cannot raise other alleged errors concerning the denial of its motion to dismiss that are based upon other alleged defenses or pleading deficiencies. *See, e.g., Riscatti* at ¶ 20 ("Although our prior decisions have interpreted R.C. 2744.02(C) broadly in favor of early appeal, they have always been tethered directly to the defense of immunity, not to other defenses"); *see also Owens* at ¶ 8-9; *Reinhold* at ¶ 21; *CAC Bldg. Properties* at ¶ 9, fn. 1.

{¶16} In this case, appellants moved to dismiss only Windsor's negligence and spoliation claims on grounds of immunity. Appellants moved to dismiss the remaining claims set forth in Windsor's amended complaint — Windsor's claims for breach of contract, breach of settlement agreement, promissory estoppel and injunctive relief — on other grounds. Thus, none of the errors alleged in appellants' first, second, sixth and seventh assignments of error involve the denial of "the benefit of an alleged immunity from liability" under R.C. 2744.02(C).

{¶17} In their first and second assignment of errors, appellants argue that the trial court erred in denying their motion to dismiss Windsor's claims for breach of contract and breach of settlement agreement because Windsor "does not have" an implied contract or implied settlement agreement with the city or NEORSD. The immunity set forth in R.C. Chapter 2744 does not apply to contract claims against a political subdivision. R.C. 2744.09(A) expressly provides: "This chapter does not apply to, and shall not be construed to apply to * * * [c]ivil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability[.]" Therefore, based on the plain language of R.C. Chapter 2744.09(A), appellants could not establish immunity under R.C. Chapter 2744 on Windsor's claims for breach of contract or breach of settlement agreement. *See Duncan v. Cuyahoga Community College*, 2012-Ohio-1949, 970 N.E.2d 1092, ¶ 29 (8th Dist.) (denial of political subdivision's motion for judgment on pleadings on plaintiff's breach of contract claim not final and appealable under R.C. 2744.02(C) and 2744.09(A)).

**{¶18}** In an attempt to circumvent this limitation, appellants argue that Windsor's contract claims are nothing more than "causes of action in negligence styled as contractual," pled to "avoid the implications" of R.C. Chapter 2744 and the statute of limitations applicable to negligence claims and that, as such, we should disregard the "label" given to Windsor's contract claims and review them as negligence claims. Appellants also assert that because (1) Windsor failed to attach a copy of any written contract or settlement agreement to its amended complaint as required under Civ.R. 10(D)(1)[1] and (2) "no contracts exist for political subdivisions outside their statutory procedures," its claims for breach of contract and breach of settlement agreement must be construed as claims for breach of an "implied contract," which cannot be asserted against a political subdivision as a matter of law.

**{¶19}** Appellants may be correct that, on the facts here, Windsor cannot establish, as a matter of law, the existence of an enforceable contract for water service or an enforceable settlement agreement. Appellants may also be correct that Windsor pled contract claims in an attempt to avoid the bar of the statute of limitations that may otherwise preclude its negligence claims. However, pursuant to R.C. 2744.02(C), we have jurisdiction to consider only whether the trial court properly denied appellants' motion to dismiss on *immunity* grounds, i.e., whether the trial court's denial of

---

[1]With respect to Windsor's failure to attach a copy of its alleged contract with the city and NEORSD for the treatment and supply of water to the property, the amended complaint states simply "[a] copy of the contract is not available at this time." The amended complaint is silent with respect to whether a written settlement agreement existed.

appellants' motion to dismiss denied appellants "the benefit of an alleged immunity from liability" — not whether the trial court correctly concluded that the allegations of the amended complaint were sufficient to state a claim for breach of contract as a matter of law and not whether the trial court erred in concluding that Windsor's claims were not barred by the statute of limitations.[2] *See, e.g., Today & Tomorrow Heating & Cooling v. Greenfield*, 4th Dist. Highland No. 13CA14, 2014-Ohio-239, ¶14-17 (appellate court lacked jurisdiction to consider the propriety of trial court's denial of village's motion for summary judgment on the issue of whether plaintiffs' claim for breach of contract stated a claim for relief); *Riscatti*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, at ¶ 19-21 (denial of motion for judgment on the pleadings predicated on a statute-of-limitations defense under R.C. 2744.04(A) does not deny the benefit of immunity and is not a final, appealable order "even though it arose along with a political subdivision's immunity claim"; "the fact that a political subdivision is the party that raises a statute-of-limitations defense does not change the general rule that the ruling on that defense is not a final,appealable order"). The trial court's alleged erroneous determination that Windsor pled sufficient facts to support its contract claims does not deny appellants the "benefit of an alleged immunity of liability."

{¶20} Likewise, appellants' sixth and seventh assignments of error do not involve the trial court's denial of the "benefit of an alleged immunity from liability." In their

---

[2]Thus, for the same reason, we lack jurisdiction to consider appellants' argument, in their fourth assignment of error, that Windsor's negligence claims are barred by the applicable statute of limitations.

sixth assignment of error, appellants argue that the trial court erred in failing to dismiss Windsor's promissory estoppel claim because (1) Withers lacked authority to bind the city to a settlement agreement, (2) NEORSD was not alleged to have participated in the settlement discussions and (3) Windsor's reliance was unreasonable as a matter of law. In their seventh assignment of error, appellants argue that the trial court erred in denying their motion to dismiss Windsor's claim for injunctive relief and in granting Windsor's "amended count for injunctive relief" without complying with Civ.R. 65.[3] These assignments of error are based upon alleged defenses that are unrelated to immunity and the trial court's denial of appellants' motion to dismiss those claims is not otherwise a final, appealable order.

{¶21} Accordingly, this court lacks jurisdiction to consider appellants' first, second, sixth and seventh assignments of error. Appellants' appeal is dismissed to the extent we lack jurisdiction to consider it.

**Political Subdivision Immunity**

{¶22} In their third, fourth and fifth assignments of error, appellants contend that the trial court erred in denying their Civ.R. 12(B)(6) motion to dismiss because they are

---

[3]There is nothing in the record to support appellants' contention that the trial court "granted" Windsor's "amended count for injunctive relief" without complying with Civ.R. 65. Rather, the record reflects that the trial court granted Windsor's motion for preliminary injunction at the time it filed its original complaint, enjoining the city and NEORSD from "discontinuing, stopping, or interrupting water service" to the property, and indicating that the order would remain in effect until the lawsuit was resolved. In any event, because this assignment of error does not involve the denial of the benefit of immunity from liability or a ruling that is otherwise the subject of a final, appealable order, we lack jurisdiction to consider it.

immune from liability on Windsor's spoliation and negligence claims pursuant to R.C. Chapter 2744.

**Standard of Review**

{¶23} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Antoon v. Cleveland Clinic Found.,* 8th Dist. Cuyahoga No. 101373, 2015-Ohio-421, ¶ 7. In deciding whether a complaint should be dismissed pursuant to Civ.R. 12(B)(6), the court's review is limited to the four corners of the complaint along with any documents properly attached to or incorporated within the complaint. *High St. Properties L.L.C. v. Cleveland*, 8th Dist. Cuyahoga No. 101585, 2015-Ohio-1451, ¶ 17, citing *Glazer v. Chase Home Fin. L.L.C.*, 8th Dist. Cuyahoga Nos. 99875 and 99736, 2013-Ohio-5589, ¶ 38. The court accepts as true all the material factual allegations of the complaint and construes all reasonable inferences to be drawn from those facts in favor of the nonmoving party. *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667, 653 N.E.2d 1186 (1995); *Brown v. Carlton Harley-Davidson, Inc.*, 8th Dist. Cuyahoga No. 99761, 2013-Ohio-4047, ¶ 12, citing *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 104, 661 N.E.2d 218 (8th Dist.1995). To prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling the plaintiff to relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. If there is "'a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *High St. Properties* at ¶ 16,

quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991). "'A court cannot dismiss a complaint under Civ.R. 12(B)(6) merely because it doubts the plaintiff will prevail.'" *Bono v. McCutcheon*, 159 Ohio App.3d 571, 2005-Ohio-299, 824 N.E.2d 1013, ¶ 8 (2d Dist.), quoting *Leichtman v. WLW Jacor Communications, Inc.*, 92 Ohio App.3d 232, 234, 634 N.E.2d 697 (1st Dist. 1994).

**{¶24}** An appellate court conducts a de novo review of a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 768 N.E.2d 1136 (2002). Under this standard of review, the appellate court must undertake an independent analysis without deference to the lower court's decision. *Hendrickson v. Haven Place, Inc.*, 8th Dist. Cuyahoga No. 100816, 2014-Ohio-3726, ¶ 12.

**{¶25}** Ohio's Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, absolves political subdivisions and their employees of tort liability, subject to certain exceptions. Whether a political subdivision or an employee of a political subdivision is entitled to statutory immunity under Chapter 2744 is a question of law for determination by the court. *See, e.g., Srokowski v. Shay*, 8th Dist. Cuyahoga No. 100739, 2014-Ohio-3145, ¶ 11, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 291, 595 N.E.2d 862 (1992), and *Feitshans v. Darke Cty.*, 116 Ohio App.3d 14, 19, 686 N.E.2d 536 (2d Dist.1996).

**{¶26}** To determine whether a political subdivision is entitled to immunity from civil liability under R.C. Chapter 2744, a reviewing court must conduct a three-tiered analysis. *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 9, citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). The first tier is the general rule that a "political subdivision" is not liable "in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1); *Hortman* at ¶ 10-11. If the political subdivision is entitled to immunity under R.C. 2744.02(A)(1), then the court must determine, under the second tier of the analysis, whether any of the five exceptions to immunity set forth in R.C. 2744.02(B) applies.[4] *Hortman* at ¶ 10-11. If an exception to immunity applies, then a third tier of analysis is performed to determine whether the political subdivision can establish one of the statutory defenses to liability set forth in R.C. 2744.03 to reinstate immunity. *Hortman* at ¶ 12.

**{¶27}** In this case, the parties do not dispute that both the city and NEORSD are "political subdivisions" entitled to the general grant of immunity under R.C. 2744.02(A)(1). *See* R.C. 2744.01(F) (definition of political subdivision). There is

---

[4] The exceptions to immunity recognized under R.C. 2744.02(B) involve the negligent operation of a motor vehicle by an employee; negligent performance of acts by an employee with respect to proprietary functions of the political subdivision; negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads; negligence of an employee relating to a physical defect in a building used in connection with the performance of a governmental function; and/or liability imposed by another section of the Revised Code.

likewise no dispute that Windsor, with its amended complaint, seeks to recover damages for losses allegedly caused by an act or omission of the political subdivision or its employees "in connection with a governmental or proprietary function."  Pursuant to R.C. 2744.01(G)(2)(c)-(d), a "proprietary function" includes "[t]he establishment, maintenance, and operation of a * * * water supply system" and "[t]he maintenance, destruction, operation, and upkeep of a sewer system."  Thus, unless an exception to immunity applies, Windsor's tort claims against the city and NEORSD would be barred under R.C. 2744.02(A)(1).

{¶28} Windsor asserts that both its spoliation and negligence claims fall within the exception to immunity set forth at R.C. 2744.02(B)(2).  Under R.C. 2744.02(B)(2), a political subdivision is liable for "injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

**Windsor's Spoliation Claim Against the City and NEORSD**

{¶29} As to its spoliation claim against the city and NEORSD, Windsor alleges that the city and NEORSD willfully destroyed the water meter that was used to overbill Windsor in 2008 in order "to disrupt Plaintiff from proving its case."  Under Ohio law, spoliation is an intentional tort.  *See, e.g., Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993) (identifying the elements of a spoliation claim as "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) *willful* destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts") (emphasis added.).

Negligent conduct does not give rise to a cause of action for spoliation. *See, e.g., Fifth Third Bank v. Gen. Bag Corp.*, 8th Dist. Cuyahoga No. 92793, 2010-Ohio-2086, ¶ 42 ("'Ohio does not recognize a cause of action for negligent spoliation of evidence.'"), quoting *White v. Ford Motor Co.*, 142 Ohio App.3d 384, 388, 755 N.E.2d 954 (10th Dist. 2001); *Wheatley v. Marietta College.*, 4th Dist. Washington No. 14CA18, 2016-Ohio-949, ¶ 109 ("[A] plaintiff who alleges that a defendant spoliated evidence must show that the defendant acted willfully so as to disrupt the plaintiff's case. The term 'willful,' as used in 'willful destruction of evidence by defendant designed to disrupt the plaintiff's case,' 'necessarily contemplates more than mere negligence or failure to conform to standards of practice, but instead anticipates an intentional, wrongful act.'"), quoting *White* at 387-388; *see also Heimberger v. Zeal Hotel Group, Ltd.*, 2015-Ohio-3845, 42 N.E.3d 323, ¶ 37 (10th Dist.). Accordingly, Windsor's spoliation claim does not fall within the exception to immunity stated in R.C. 2744.02(B)(2).

{¶30} Nor does it fall within any other exception to immunity under R.C. 2744.02(B). *See, e.g., O'Brien v. Olmsted Falls*, 8th Dist. Cuyahoga Nos. 89966 and 90336, 2008-Ohio-2658, ¶ 39 (trial court properly granted summary judgment on plaintiff's spoliation claim against city because city is immune from intentional torts under R.C. 2744.02); *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, 1 N.E.3d 833, ¶ 2, 49 (1st Dist.) (where child sustained injuries from a falling tree limb on golf course operated by the park district, park district was immune from liability on spoliation claim alleging that park district altered, destroyed, and removed the tree and fallen branches;

physical-defect exception to immunity under R.C. 2744.02(B)(4) does not apply to intentional torts, leaving the general grant of immunity under R.C. 2744.02(A)(1) intact. Accordingly, we find the trial court erred as a matter of law in concluding that statutory immunity did not bar Windsor's spoliation claim. Appellants' third assignment of error is sustained.

**Windsor's Negligence Claims Against the City and NEORSD**

{¶31} In their fourth assignment of error, appellants argue that the trial court erred in denying their motion to dismiss Windsor's negligence claims against the city and NEORSD on statutory immunity grounds. In their motion to dismiss, appellants indicated that they had "no reason to dispute the operation of a municipal water/sewer system is a recognized proprietary function" and proceeded to argue that one or more defenses to liability set forth in R.C. 2744.03(A)(3) and/or (5) applied to reinstate immunity. They take a different approach on appeal arguing, for the first time, that Windsor's negligence claims arise out of two city "inspections" of the property in 2005 and 2008, which they contend are a "governmental function" under R.C. 2744.01(C)(2)(p) — rather than a "proprietary function" under R.C. 2744.01(G)(2)(c)-(d) — and that the exception set forth in R.C. 2744.02(B)(2) applicable to negligent acts by employees in the performance of proprietary functions, therefore, does not apply.

{¶32} R.C. 2744.01(C)(2)(p) provides:

A "governmental function" includes, but is not limited to * * * [t]he provision or nonprovision of inspection services of all types, including, but

not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures[.]

**{¶33}** It is, however, well established that a party cannot raise arguments and issues for the first time on appeal that it failed to raise before the trial court. *See, e.g., Mosley v. Cuyahoga Cty. Bd. of Mental Retardation*, 8th Dist. Cuyahoga No. 96070, 2011-Ohio-3072, ¶ 55, citing *Dolan v. Dolan*, 11th Dist. Trumbull Nos. 2000-T-0154 and 2001-T-0003, 2002-Ohio-2440, ¶ 7, citing *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 322 N.E.2d 629 (1975); *Home Bank, F.S.B. v. Papadelis*, 8th Dist. Cuyahoga Nos. 87527, 87528, 87529 and 87530, 2006-Ohio-5453, ¶ 32. Accordingly, we need not address appellants' "governmental function" argument here.

**{¶34}** Even if, however, we were to consider the merits of appellants' "governmental function" argument, we would find no error by the trial court in denying appellants' motion to dismiss Windsor's negligence claims against the city and NEORSD because we would find that Windsor's claims involved the alleged negligent performance of a proprietary function. Citing *Klein v. Sloger,* 7th Dist. Columbiana No. 90-C-19, 1991 Ohio App. LEXIS 2455 (May 24, 1991), and *Gates-Hewlett v. Cleveland*, 8th Dist. Cuyahoga No. 78863, 2001 Ohio App. LEXIS 3734 (Aug. 23, 2001), *Coleman v.*

*Degray*, 8th Dist. Cuyahoga No. 76934, 2000 Ohio App. LEXIS 5716 (Dec. 7, 2000), appellants argue that "all inspections" performed by a political subdivision are a governmental function for which the political subdivision is immune from negligence, regardless of the purpose or context of the inspection. In *Klein*, the Seventh District held that the inspection of water and sewage systems by the Columbiana County Department of Health, which a potential home buyer had requested in connection with his purchase of a residence, was a governmental function because "it was a function imposed upon the state as an obligation of sovereignty and performed by appellee health department pursuant to legislative requirement, namely, R.C. 3701.56 (requiring local boards of health to enforce the Ohio Sanitary Code) and R.C. 3707.01 (providing for local boards of health to regulate the location, construction and repair of water closets, privies, cesspools, sinks, plumbing and drains)." *Klein*, 1991 Ohio App. LEXIS 2455 at *4-5. *Gates-Hewlett* involved an alleged faulty residential housing inspection by a city painting inspector, 2001 Ohio App. LEXIS 3734 at *3, 9-13, and in *Coleman* this court held that a city's inspection and approval of a residential contractor's work in connection with a low-interest loan program was a governmental function where the city could issue a stop work order if the work was not up to code. *Coleman*, 2000 Ohio App. LEXIS 5716, at *2-6. However, unlike the inspections at issue in those cases, the two alleged "inspections" referenced in Windsor's amended complaint — the 2005 "inspection" of the property to determine if there was an underground water leak or the July 2008 "inspection" of the water meter to make sure it was operating properly — were directly

related to appellants' operation, maintenance and upkeep of the water supply and sewer systems and were performed to ensure that Windsor was being billed for only water and sewer services appellants actually used by Windsor.

{¶35} Simply because Windsor described certain of its negligence claims against the city and NEORSD as claims for "negligent inspection" in its amended complaint does not compel the conclusion that the claims involve the "provision or nonprovision of *inspection services*" that are a governmental function under R.C. 2744.01(C)(2)(p). (Emphasis added.) As the Ninth District explained in *Kendle v. Summit Cty.*, 9th Dist. Summit No. 15268, 1992 Ohio App. LEXIS 2005 (Apr. 15, 1992), appellants have taken the "inspection" language in R.C. 2744.01(C)(2)(p) "out of context":

> This statute refers to inspection services a political subdivision may or may not choose to provide to the public and any liability based thereon. * * * It does not encompass the obligation of a political subdivision to inspect the operation of its own proprietary functions. If we were to accept the County's position, political subdivisions might avoid liability by deciding to forego inspection of their proprietary functions. They could put blinders on, ignoring dangers which a reasonable inspection would have revealed. Clearly the operation of a sewer system includes a duty to use due diligence to inspect for defects. Accordingly the County is chargeable with knowledge of what a reasonable inspection would have revealed. *See* Restatement of the Law 2d, Torts (1965), 44, Section 289, Comment.

*Kendle* at *5-6; *see also Riscatti v. Prime Properties Ltd. Partnership*, 8th Dist. Cuyahoga No. 97254, 2012-Ohio-2941, ¶ 30 (for purposes of sovereign immunity, "[a] complaint is properly characterized as a maintenance, operation, or upkeep issue," i.e., relating to the performance of a proprietary as opposed to a governmental function, "when 'remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, *inspection,* repair, removal of obstructions, or general repair of deterioration'") (emphasis added), quoting *Essman v. Portsmouth*, 4th Dist. Scioto No. 09CA3325, 2010-Ohio-4837, ¶ 32; *see also Martin v. Gahanna*, 10th Dist. Franklin No. 06AP-1175, 2007-Ohio-2651, ¶ 17 ("need to *inspect* and replace missing components necessary for the safe operation of the storm water system clearly falls within the definition of maintenance or upkeep of a sewer system") (emphasis added).

{¶36} Appellants also argue that the trial court erred in denying their motion to dismiss Windsor's negligence claims against the city and NEORSD on immunity grounds because Windsor did not specifically allege in its amended complaint that the city or NEORSD "acted with *negligence in the performance of a proprietary function*"; rather, its amended complaint "is predicated in [sic] simple negligence only." (Emphasis added.) Appellants contend that "in the absence of specific allegations" in the amended complaint that one of the five exceptions to immunity applies, appellants must be deemed to be immune from liability from Windsor's claims under the general grant of immunity in R.C. 2744.02(A)(1). Finally, appellants argue that the trial court erred in denying appellants' motion to dismiss Windsor's negligence claims against the city and NEORSD

because even if the exception to immunity in R.C. 2744.02(B)(2) applies, immunity was reinstated based on the defense to liability set forth at R.C. 2744.03(A)(5).[5]  We disagree.

**{¶37}** As this court previously explained, in addressing a plaintiff's burden on a Civ.R. 12(B)(6) motion based on political subdivision immunity:

> "In Ohio, a notice-pleading state, the plaintiff need not prove his or her case at the pleading stage. * * * Thus, a plaintiff need not affirmatively dispose of the immunity question altogether at the pleading stage. * * * Requiring a plaintiff to affirmatively demonstrate an exception to immunity at this stage would be tantamount to requiring the plaintiff to overcome a motion for summary judgment at the pleading stage. * * * Instead, a plaintiff must merely allege a set of facts that, if proven, would plausibly allow for recovery."

*Srokowski v. Shay*, 8th Dist. Cuyahoga No. 100739, 2014-Ohio-3145, ¶ 14, quoting *Scott v. Columbus Dept. of Pub. Utils.*, 192 Ohio App.3d 465, 2011-Ohio-677, 949 N.E.2d 552,

---

[5]  R.C. 2744.03(A)(5) provides:

The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

Construing the allegations of the amended complaint in the light most favorable to Windsor, there is nothing in the amended complaint that compels the conclusion that Windsor's alleged harm was attributable to "the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources."

¶ 8 (10th Dist.). Thus, Windsor was not required to prove the applicability of an exception to immunity or to disprove the applicability of a claimed defense to an exception to immunity to avoid the dismissal of its amended complaint.

{¶38} At this stage of the proceedings, our analysis is limited to the facts alleged in the amended complaint. Construing all material allegations in the amended complaint (along with all reasonable inferences that could be drawn therefrom) in favor of Windsor, we cannot state that there is no set of facts consistent with the complaint that would allow Windsor to prove an exception to immunity from liability on its negligence claims against the city and NEORSD or that a defense to liability would necessarily apply to reinstate immunity even if Windsor were successful in establishing an exception to immunity under R.C. 2744.02(B)(2). Therefore, the trial court did not err in denying appellants' motion to dismiss Windsor's negligence claims against the city and NEORSD on immunity grounds. *See, e.g., McKee v. Univ. Circle, Inc.*, 8th Dist. Cuyahoga No. 102068, 2015-Ohio-2953 (trial court did not err in denying motion to dismiss on grounds of political subdivision immunity where it was "not clear beyond dispute that [defendant] is a political subdivision entitled to immunity" and based on the allegations in his complaint, plaintiff met his "burden of merely alleging a set of facts that, if proven, would plausibly allow for recovery").

{¶39} Appellants' fourth assignment of error is overruled.

**Windsor's Negligent Misrepresentation Claim Against Withers**

{¶40} In their fifth assignment of error, appellants contend that the trial court erred in denying their motion to dismiss the negligence misrepresentation claim against Withers because he is immune from liability under R.C. 2744.03(A)(6). The immunity granted to political subdivisions under R.C. Chapter 2744 "is extended, with three exceptions, to employees of the political subdivisions under R.C. 2744.03(A)(6)." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶47. However, the immunity analysis applied to claims against an employee of a political subdivision differs from that applied in determining the immunity of the political subdivision itself. Instead of the three-tiered analysis applied in determining whether a political subdivision is immune from liability, whether an employee of a political subdivision is immune from liability is determined by applying R.C. 2744.03(A)(6). *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶17. Under R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability, unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside of the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. * * *

{¶41} Windsor's amended complaint alleges that Withers was acting within "the course and scope of his employment as [the city's] Director of Utilities" at the time of his actions and does not allege that civil liability was imposed on Withers by any section of the Ohio Revised Code. Therefore, neither subsection (a) nor (c) applies to Windsor's

claim against Withers and Withers is immune from liability for simple negligence. In order for Withers to be liable to Windsor, Windsor would have to show that Withers committed the actions (or omissions) that allegedly caused harm to Windsor "with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6)(b). Assuming all the facts pled in the amended complaint as true, there is nothing in the amended complaint that could support a finding that Withers acted or failed to act "with malicious purpose, in bad faith, or in a wanton or reckless manner." In support of its claim for negligent misrepresentation against Withers, Windsor alleges that Withers "provided false information or representations in the guidance of how to resolve a business dispute" between the parties and "failed to exercise reasonable care in communicating such false information or representations." Such allegations, if true, could support only a finding of ordinary negligence. Because Withers was otherwise immune from liability for negligence under 2744.03(A)(6), the trial court erred in denying appellants' motion to dismiss Windsor's negligent misrepresentation claim against Withers. Appellants' fifth assignment of error has merit and is sustained.

{¶42} The trial court's denial of appellants' Civ.R. 12(B)(6) motion to dismiss is affirmed as to Windsor's negligence claims against the city and NEORSD. The trial court's denial of appellants' motion to dismiss is reversed as to Windsor's negligent misrepresentation claim against Withers and its spoliation claim against the city and NEORSD. The remainder of this appeal is dismissed because this court lacks

jurisdiction to consider it. The matter is remanded for further proceedings consistent with this opinion.

**{¶43}** Appeal dismissed in part; judgment affirmed in part; judgment reversed in part; remanded.

It is ordered that appellee and appellants share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MELODY J. STEWART, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR