[Cite as *Weiner v. Hts. Med. Bldg., L.L.C.*, 2025-Ohio-2534.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DAVID WEINER,                                          :

    Plaintiff-Appellee,                         :

                            No. 114863

    v.                                                      :

HEIGHTS MEDICAL BUILDING
LLC, ET AL.,                                            :

    Defendants-Appellants.              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 17, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-103458

---

### *Appearances:*

Bashein & Bashein Co., LPA, W. Craig Bashein, and Thomas J. Sheehan; Flowers & Grube, Paul W. Flowers, and Kendra N. Davitt, *for appellee.*

William R. Hanna, Cleveland Heights Director of Law, and H. Lee Crumrine, Assistant Director of Law; Baker Dublikar, Andrea K. Ziarko, and Gregory A. Beck, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Appellant City of Cleveland Heights (the "City"), one of several defendants below, appeals the trial court's order denying its motion for leave to file

a motion for summary judgment on the issue of political-subdivision immunity. Finding merit to the appeal, we reverse and remand for further proceedings.

## I. Procedural History

{¶ 2} On September 9, 2024, plaintiff-appellee David Weiner ("plaintiff-appellee") filed a personal-injury complaint against Heights Medical Building LLC ("Heights Medical"); Luna Bakery, LLC; Luna Bakery and Cafe, LLC; Luna Bakery Café; Luna MH, LLC; Luna CLE, LLC; Luna Pastry, LLC (collectively the "Luna defendants" or "Luna"); and the City. The complaint alleges that plaintiff-appellee was a business invitee of Luna's Cleveland Heights location and that he sustained injuries while stepping from a concrete curb onto Luna's outdoor patio. Count 1 levels allegations of negligence against Heights Medical and Luna.[1] Count 2 contends that the City was negligent in multiple respects and includes an allegation that the City, at all times, "was engaged in proprietary functions within the meaning of Ohio Revised Code § 2744.01(G)." (Complaint at ¶ 28.)

{¶ 3} The appearance docket reflects that by September 16, 2024, all defendants had been served. On October 10, 2024, the court scheduled a telephonic "pretrial/case-management conference" for October 31, 2024. The same day, October 10, the Luna defendants appeared, answered, and filed a notice indicating they had served their Civ.R. 26(B)(3) initial disclosures on all other parties. Heights Medical and the City filed separate answers the following day, October 11, 2024. The

---

[1] Heights Medical owns the building in which Luna operates. None of plaintiff-appellee's claims against Heights Medical or the Luna defendants have been decided or are otherwise at issue in this appeal.

City's answer, filed by its director of law, included an affirmative defense alleging it "is entitled to immunity, including statutory, absolute, or qualified immunity, as well as immunity from punitive damages, including immunity under the provisions of Ohio's Political Subdivision Tort Immunity Statute under R.C. Chapter 2744." (City's answer at ¶ 37.)

{¶ 4} Civ.R. 26(F)(1) and (2) required the parties to "confer as soon as practicable" prior to the case-management conference to develop a proposed discovery plan and further required the parties to "fil[e] with the court . . . a written report outlining the plan" in advance of the case-management conference. In addition to discovery issues, Civ.R. 26(F)(3) provides that the written plan "shall state the parties' views and proposals on . . . [a]ny other orders that the court should issue . . . under Civ.R. 16(B) and (C)." Civ.R. 16(B) indicates that the court's scheduling order may "[l]imit the time to join other parties, amend the pleadings, complete discovery, *and file motions*." (Emphasis added.) Civ.R. 16(B)(3)(a). Civ.R. 16(C) lists the matters for consideration at any pretrial conference, which includes "determination of . . . a timetable for . . . *[f]iling of motions, responses, replies and decisions*." (Emphasis added.) Civ.R. 16(C)(2)(o) and (C)(2)(o)(vii).

{¶ 5} The trial court docket is silent as to whether the parties held a Civ.R. 26(F) planning conference. Even if they had, the docket does not reflect that the parties filed a written plan.

{¶ 6} The telephonic-case-management conference went forward on October 31, 2024. The trial court subsequently journalized two entries. On

October 31, it docketed a detailed "standing order for case management." The standing order contained discovery deadlines, scheduled a settlement conference for January 30, 2025, set a final pretrial date of March 19, 2025, and scheduled trial for April 2, 2025. [2] This order made no reference to dispositive-motion deadlines or requesting leave to file any dispositive motions. The second order, journalized November 4, 2024, is 12 pages in length, not counting the O.S.J. cover page. The November 4 order likewise made no reference to dispositive-motion deadlines or requesting leave to file same.

{¶ 7} On November 15, 2024, the Luna defendants filed a motion requesting permission for their insurance adjuster to appear remotely for the January 30, 2025 settlement conference and the March 19, 2025 final pretrial. Later the same day, the court granted the order in part, permitting remote attendance at the settlement conference but requiring personal attendance at all other court events.

{¶ 8} On December 30, 2024, 80 days after the City first appeared in the case and 60 days after the case-management conference, two additional attorneys — outside counsel — formally appeared on its behalf. The same day, it filed a notice indicating it had just served its first set of interrogatories and first request for production of documents upon the plaintiff-appellee, with responses due "within twenty eight (28) days of service hereof, in accordance with Ohio Civil Rules 33 and

---

[2] The trial court set a fact-discovery deadline of January 28, 2025, a deadline of February 7, 2025, for the plaintiff-appellee's expert reports, and a deadline of March 14, 2025, for the defense's expert reports.

34, respectively." The deadline of January 27, 2025, was one day before the fact-discovery deadline and three days before the scheduled settlement conference.

{¶ 9} Heights Medical filed a motion on January 2, 2025, requesting permission for its insurance representative to appear remotely at the upcoming settlement conference and the final pretrial. Once again, the court granted the motion in part the same day. As with the Luna defendants' similar motion, it permitted the insurance representative to attend the January 30, 2025 settlement conference remotely but required personal attendance at all other court events.

{¶ 10} The trial court held the settlement conference as scheduled on January 30, 2025. The journal entry memorializing the conference notes that the parties appeared through counsel, that the case did not settle, and that "dates and orders remain in effect."

{¶ 11} On February 4, 2025, the parties filed a joint motion to amend the scheduling order, indicating that "the complexity of the case and the fact that discovery is ongoing" had been discussed with the trial court at the settlement conference. In addition to suggesting extensions of the fact-discovery and expert-report deadlines, the parties requested a new final pretrial date of April 2, 2025, and a trial date of May 19, 2025. On February 10, 2025, the trial court journalized an entry indicating the motion was "denied at this time," but further indicating that "the court will discuss with counsel at the final pretrial."

{¶ 12} On February 21, 2025, the City filed the motion at issue in this appeal, i.e., its motion for leave to file a motion for summary judgment on the issue of

political-subdivision immunity. The four-page motion focused primarily on case law addressing the favorability of determining immunity issues prior to trial. It contained a synopsis of the arguments the City intended to present under R.C. 2744.01 and 2744.02, including citations to two cases, but was not postured as a motion for summary judgment *instanter*. For example, there were no affidavits, discovery responses, deposition transcripts, stipulations or other Civ.R. 56(C) materials included with the motion, and no discussion of the standards governing a motion for summary judgment or the "three-tiered analysis" applicable to claims of political-subdivision-tort immunity.[3] Finally, the motion for leave did not propose a filing deadline for the City's motion for summary judgment or address how dispositive-motion practice would affect the litigation timeline.

{¶ 13} The trial court denied the City's motion for leave the same day. The journal entry simply indicates, without discussion, that the City's motion was denied and that "dates and orders remain as set." This timely appeal followed.

## II. Analysis

{¶ 14} The City presents a single assignment of error for our review:

> The trial court abused its discretion when it denied the City of Cleveland Heights' motion for leave to file a motion for summary judgment on the basis of political subdivision immunity as it deprived the City [of] the benefit of an alleged immunity pursuant to the Political Subdivision Tort Liability Act, R.C. Chapter 2744.

---

[3] *Wright v. Cuyahoga Metro. Hous. Auth.*, 2025-Ohio-102 (8th Dist.); *FirstEnergy Corp. v. Cleveland*, 2009-Ohio-2257, ¶ 11 (8th Dist.).

## A. Final, Appealable Order

{¶ 15} We first address whether the trial court's February 21, 2025 order denying the City's motion for leave to file a motion for summary judgment constitutes a final, appealable order. Based upon Ohio Supreme Court precedent and Eighth District authority, including this court's recent decision in *Hopkins v. Greater Cleveland Regional Transit Auth.*, 2024-Ohio-2265 (8th Dist.), we answer that question in the affirmative.

{¶ 16} "[A]ppellate jurisdiction is limited to reviewing orders that are both final and appealable." *Rae-Ann Suburban, Inc. v. Wolfe*, 2019-Ohio-1451, ¶ 9 (8th Dist.), citing Ohio Const., art. IV, § 3(B)(2); R.C. 2505.02 and 2505.03. "'If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter and the appeal must be dismissed.'" *Scheel v. Rock Ohio Caesars Cleveland, L.L.C.*, 2017-Ohio-7174, ¶ 7 (8th Dist.), quoting *Assn. of Cleveland Firefighters, # 93 v. Campbell*, 2005-Ohio-1841, ¶ 6 (8th Dist.). If an appellate court determines that there is no final, appealable order, the "appellate court does not possess jurisdiction to review the matter and must dismiss the case sua sponte." *Scanlon v. Scanlon*, 2012-Ohio-2514, ¶ 5 (8th Dist.).

{¶ 17} "An order denying a political subdivision the benefit of an alleged immunity from liability generally constitutes a final order." *Hopkins* at ¶ 10, citing *Hubbell v. Xenia*, 2007-Ohio-4839, ¶ 12, and *Supportive Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 2013-Ohio-2410, ¶ 11. The order is final and

appealable "even if the order makes no final determination on immunity." *Hopkins* at ¶ 10, citing *Supportive Solutions, L.L.C.* at ¶ 12, citing R.C. 2744.02(C).

{¶ 18} *Hopkins*, 2024-Ohio-2265 (8th Dist.), while more procedurally complex than the present action, is dispositive on the issue of whether the trial court's denial of leave constitutes a final, appealable order. In that case, the Greater Cleveland Regional Transit Authority ("GCRTA"), a political subdivision, had requested and received a dispositive-motion deadline, explicitly noting that it intended to argue political-subdivision immunity. *Hopkins* at ¶ 2. The trial court set a deadline of June 16, 2023, as well as a trial date of August 16, 2023. *Id.* at ¶ 3. GCRTA later filed a motion for an extension of time, seeking a new dispositive-motion deadline of July 21, 2023. *Id.* Based on a docket entry ultimately determined to be the court clerk's notation rather than a controlling journal entry, *id.* at ¶ 18-20, GCRTA believed the motion for extension had been granted. Thereafter, GCRTA filed a motion for summary judgment after the original deadline but prior to what it incorrectly believed was the new deadline. *Id.* at ¶ 2-7 and 12.

{¶ 19} In an August 10, 2023 journal entry addressing GCRTA's motions, "[t]he trial court's entry did not explicitly deny the motion for enlargement of time to file dispositive motions, nor did it rule on the actual motion for summary judgment." *Id.* at ¶ 7. Instead, it "found that GCRTA's motion for summary judgment was not before the court." *Id.* The trial court reasoned that GCRTA had not filed its motion for summary judgment within the original deadline, that the motion for summary judgment was therefore filed without leave, and that there "was

insufficient time" under Civ.R. 6(C) for the plaintiff to respond to any summary-judgment motion prior to the agreed-upon trial date of August 16, 2023. *Id.* GCRTA filed a notice of appeal prior to trial.

{¶ 20} This court concluded that the trial court's August 10, 2023 journal entry constituted a final, appealable order. It explicitly noted that "[a] trial court's failure to rule on a motion is generally deemed to be a *denial* of that motion for purposes of appellate review." (Emphasis added.) *Id.* at ¶ 11, citing *Thompson v. Cooper*, 2017-Ohio-5549, ¶ 22 (5th Dist.), and *State v. Olah*, 2001-Ohio-1641, ¶ 33, fn. 2 (9th Dist.). The trial court therefore "effectively denied GCRTA's motion for enlargement of time" to file its summary-judgment motion. *Hopkins* at ¶ 21. This court held:

> GCRTA, a political subdivision, filed a motion for an enlargement of time to file its motion for summary judgment, alleging political subdivision immunity on June 15, 2023. The trial court did not issue an order granting nor denying the motion. GCRTA filed its motion for summary judgment on July 31, 2023. After that, the trial court declared that GCRTA's motion for summary judgment was not pending a decision. *In essence, this declaration is a failure to rule upon the procedural motion for leave to file its motion for summary judgment. Given the motion was a request for time to present its immunity defense, we find GCRTA was denied the benefit of its alleged affirmative defense.* Thus, the trial court's judgment entry of August 10, 2023, is a final appealable order. This court has jurisdiction to review the August 10, 2023 order in GCRTA's first assignment of error.

(Emphasis added.) *Id.* at ¶ 12.[4]

---

[4] The dissenting judge, while disagreeing with the majority on its abuse-of-discretion analysis, concurred with the majority's conclusion that GCRTA was entitled to an immediate appeal of the trial court's order, characterizing the order as an "implicit denial" of the motion for an extension of the summary-judgment deadline, which

{¶ 21} While the present action does not require the careful parsing of procedural rulings necessary in *Hopkins*, 2024-Ohio-2265 (8th Dist.), the endpoint is the same: Both *Hopkins* and the present action involve a request for time to present an immunity defense, i.e., a procedural motion for leave to file a motion for summary judgment. In accordance with *Hopkins* and the authority cited therein, the denial of the City's motion for leave to file its motion for summary judgment denied the City the benefit of its alleged affirmative defense. It is therefore a final, appealable order.

{¶ 22} Cases cited by plaintiff-appellee are distinguishable. For example, after correctly noting that the trial court judge did not rule on the City's immunity defense, plaintiff-appellee cites *Johnson-Newberry v. Cuyahoga Cty.*, 2019-Ohio-3655, ¶ 12 (8th Dist.), for the proposition that R.C. 2744.02(C) applies only to the denial of the benefit of alleged immunity and "does not authorize appellate courts to otherwise review alleged errors that do not involve class of immunity." The relevant portion of *Johnson*, however, dealt only with the county's appeal of the plaintiff's motion for leave to amend the complaint, which "sought only to correct a misnomer in the county defendant's name and did not involve any issues involving 'immunity from liability[.]'" *Id*. at ¶ 12. In *Windsor Realty & Mgt., Inc. v. N.E. Ohio Regional Sewer Dist.*, 2016-Ohio-4865, ¶ 19 (8th Dist.), another case cited by plaintiff-appellee, this court held:

"prevented the political subdivision from presenting its immunity defense in a dispositive motion." *Id*. at ¶ 30 and 40.

> [W]e have jurisdiction to consider only whether the trial court properly denied appellants' motion to dismiss on immunity grounds, i.e., whether the trial court's denial of appellants' motion to dismiss denied appellants "the benefit of an alleged immunity from liability" — not whether the trial court correctly concluded that the allegations of the amended complaint were sufficient to *state a claim for breach of contract as a matter of law and not whether the trial court erred in concluding that Windsor's claims were not barred by the statute of limitations.*

(Emphasis added.) *Id.* at ¶ 19. *Windsor* is therefore likewise inapplicable. The *Windsor* Court merely rejected any contention that this court had jurisdiction over issues clearly unrelated to the benefit of an alleged immunity.

{¶ 23} In *Hale v. Toth*, 2023-Ohio-2954 (8th Dist.), this court declined to consider aspects of the appeal related to "the intracorporate conspiracy doctrine and the statute of limitations." *Id.* at ¶ 12. This court explained that the Ohio Supreme Court had previously "reviewed whether the denial of a public subdivision's motion for judgment on the pleadings based a statute-of-limitations defense under R.C. 2744.04 is a final appealable order and found that it is not." *Id.* at ¶ 12, citing *Riscatti v. Prime Properties Ltd. Partnership*, 2013-Ohio-4530, ¶ 2. In *Riscatti*, the Ohio Supreme Court had agreed with this court's reasoning that "the fact that a political subdivision is the party that raises a statute-of-limitations defense does not change the general rule that the ruling on that defense is not a final, appealable order." *Id.* at ¶ 21.

{¶ 24} Another of plaintiff-appellee's cases, *Johnson v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-938, ¶ 50 (8th Dist.), stands for the proposition that "R.C. 2744.02(C) grants appellate courts jurisdiction to review a trial court

order denying a motion for summary judgment based upon immunity." *Id*. at ¶ 50. This does not suggest that other types of trial court orders denying the benefit of immunity are not final and appealable.

{¶ 25} *Vanek v. Geauga Soil & Water Conservation Dist*., 2020-Ohio-3950 (9th Dist.), is likewise distinguishable. In *Vanek*, defendant Gail L. Prunty, an employee of the Geauga Soil and Water Conservation District, was driving in the course and scope of her employment when an auto collision occurred. After two sets of plaintiffs filed separate complaints against Prunty and the District, with the cases then consolidated, Prunty moved for judgment on the pleadings based on political-subdivision immunity. *Id*. at ¶ 1-2. One set of plaintiffs opposed the motion and further requested leave to file a first amended complaint. *Id*. at ¶ 2. The trial court "granted the motion for leave to file a first amended complaint and found Ms. Prunty's motion for judgment on the pleadings to be moot." *Id*. The moving plaintiffs filed their amended complaint. *Id*.

{¶ 26} Prunty appealed, arguing that the trial court "erred in failing to reach the merits of her motion for judgment on the pleadings because the granting of leave to amend the complaint denied [her] of the benefits of an alleged political subdivision immunity." *Id*. at ¶ 4. The Ninth District rejected Prunty's argument that the trial court's order was final and appealable. It reasoned that an amended complaint supplanted the original, and therefore "the original complaint, to which Ms. Prunty's motion for judgment on the pleadings was directed, *was no longer*

*pending* when it was supplanted by the amended complaint." (Emphasis added.) *Id.* at ¶ 7. The court further explained:

> Key to this analysis is the fact that Ms. Prunty's motion for judgment on the pleadings was not denied by the trial court; rather *the motion was rendered moot once the amended complaint was filed.* Upon the filing of the amended complaint, Ms. Prunty's motion for judgment on the pleadings became moot because the complaint from which she sought the alleged benefit of immunity was no longer active. *Because the complaint from which she sought immunity was no longer pending, there was no benefit of immunity to be enjoyed.* Moreover, appellant was not prohibited from filing a motion for judgment on the pleadings and raising an immunity defense in response to the amended complaint. The benefit of the alleged immunity as to the active complaint was thus still available to the appellant.

(Emphasis added.) *Id.* at ¶ 8.

{¶ 27} Plaintiff-appellee compares the present case to *Vanek* by stating that in both cases, the immunity defense had never been denied and was still available. In our view, however, the better interpretation of *Vanek* is that it turned on the emphasized language above. *Vanek* essentially involved a fresh start, with no immunity defense in play at the time Prunty filed her notice of appeal. Once the amended complaint rendered the motion for judgment on the pleadings moot, the original complaint "was no longer pending." *Id.* As a result, at the time Prunty filed her appeal, "there was no benefit of immunity to be enjoyed." *Id.*

{¶ 28} Instead, we find this court's decision in *Hopkins*, 2024-Ohio-2265 (8th Dist.), controlling. The trial court's denial of the City's motion for leave to file a motion for summary judgment, while not a substantive decision on immunity, nevertheless denied the City the benefit of an alleged immunity. "[T]he General

Assembly's use of the words 'benefit' of an 'alleged' immunity in R.C. 2744.02(C) illustrates that the statute is not limited to orders that finally resolve the immunity question[.]" *Supportive Solutions, L.L.C.*, 2013-Ohio-2410, at ¶ 13.

{¶ 29} Plaintiff-appellee argues that interpreting the trial court's order as final and appealable would constitute a de facto expansion of R.C. 2744.02(C), with the result that "there will be no end to the mischief that will inevitably ensue." (Plaintiff-appellee's brief at p. 6.) Plaintiff-appellee predicts:

> Any political subdivision that feels that the trial judge has not allotted enough time for discovery to be concluded and summary judgment to be sought in a case management order, can immediately initiate appellate review and secure an additional year or more until that process concludes.

*Id.* We quote this portion of plaintiff-appellee's argument not to dismiss it outright, but rather to acknowledge it as a valid policy concern. We respond, however, with two points. First, we reject the contention that finding the trial court's order final and appealable would constitute an expansion of R.C. 2744.02(C). It is instead how the Ohio Supreme Court has interpreted the statute and how this court has previously ruled accordingly. As previously discussed, the *Hopkins* Court treated the order appealed from as the denial of GCRTA's motion to leave requesting "time to present its immunity defense" by way of a motion for summary judgment. *Hopkins* at ¶ 12. *Hopkins* held that this denied GCRTA the benefit of its alleged immunity defense, and the appellate court therefore had jurisdiction to review the order. *Id.* We find this case procedurally analogous to *Hopkins* in that respect.

Indeed, a contrary decision would arguably rise to the level of an intradistrict conflict.

{¶ 30} Second, in reversing this court's decision in *Supportive Solutions, L.L.C.*, the Ohio Supreme Court wrote that "the court of appeals expressed concern that expanding *Hubbell*[, 2007-Ohio-4839], could lead to abuse by political subdivisions delaying the assertion of a timely immunity defense." *Supportive Solutions, L.L.C.* at ¶ 21. It nevertheless wrote that it had "explicitly rejected the use of judicial policy preferences to override valid legislation" and that therefore neither its "notions of public policy nor those of the appellate court establish a basis for a refusal to apply R.C. 2744.02(C) as written." *Id.* We are therefore precluded from considering the policy considerations raised by plaintiff-appellee.

## B. Abuse of Discretion

{¶ 31} "Whether the trial court abused its discretion in denying [a] motion for leave . . . is a distinct question from whether the trial court's order denying that motion is immediately appealable." *Supportive Solutions, L.L.C.*, 2013-Ohio-2410, at ¶ 20. Echoing this framework, this court wrote in *Hopkins* that "[t]he standard of review for *procedural* decisions regarding the filing, hearing, and disposition of a motion for summary judgment is an abuse of discretion." (Emphasis added.) *Hopkins*, 2024-Ohio-2265, at ¶ 17 (8th Dist.), citing *United States Bank Trust, N.A. v. Antoine*, 2019-Ohio-3868, ¶ 11 (9th Dist.), Civ.R. 6(B), and *Ngaoka v. Soc. Natl. Bank*, 1990 Ohio App. LEXIS 2986 (8th Dist. July 19, 1990). A trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to

a matter over which it has discretionary authority." *Hunter v. Troutman*, 2025-Ohio-366, ¶ 64 (8th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). "An abuse of discretion 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Hopkins* at ¶ 17, quoting *Blue v. Bur. of Workers' Comp.*, 2023-Ohio-3481, ¶ 10 (8th Dist.).

{¶ 32} "'[T]he decision of whether or not to grant . . . leave [to file a motion for summary judgment] under Civ.R. 56(A) is left to the sound discretion of the trial court.'" *Murgu v. Lakewood City School Dist., Bd. of Edn.*, 2018-Ohio-4643, ¶ 15 (8th Dist.), quoting *Keller v. Russell*, 2000 Ohio App. LEXIS 2748 (4th Dist. June 9, 2000). In *Murgu*, Lakewood argued that "that the trial court abused its discretion by not allowing them to present its political subdivision immunity defense in summary judgment proceedings." *Murgu* at ¶ 10. Lakewood had previously moved for summary judgment without including an argument regarding political-subdivision immunity. The trial court denied the motion. *Id*. at ¶ 12. Lakewood filed a motion for leave to supplement its motion for summary judgment and surreply brief, as well as a motion for leave to file a summary-judgment motion addressing immunity. The trial court denied Lakewood's motion for leave to file for summary judgment on immunity. *Id*. at ¶ 14. The trial court held that "affirmative defenses [such as political-subdivision immunity] will be addressed at trial based on evidence presented" and that Lakewood's "motion is out of rule." *Id*. at ¶ 5. On

appeal, Lakewood argued, inter alia, "that the trial court, by not allowing Lakewood leave to file a motion for summary judgment on political subdivision immunity, abused its discretion by not resolving its right to political subdivision immunity in summary judgment proceedings so as to avoid an unnecessary and costly trial, thereby denying Lakewood the benefit of immunity." *Id.* at ¶ 14.

{¶ 33} The City's arguments are similar to those made by Lakewood in *Murgu*. The City focuses on precedent holding that political-subdivision-immunity defenses are best resolved in summary-judgment proceedings prior to trial. In that regard, the Ohio Supreme Court has stated:

> "[D]etermination of whether a political subdivision is immune from liability is usually pivotal to the ultimate outcome of a lawsuit. Early resolution of the issue of whether a political subdivision is immune from liability pursuant to R.C. Chapter 2744 is beneficial to both of the parties. If the appellate court holds that the political subdivision is immune, the litigation can come to an early end, with the same outcome that otherwise would have been reached only after trial, resulting in a savings to all parties of costs and attorney fees. Alternatively, if the appellate court holds that immunity does not apply, that early finding will encourage the political subdivision to settle promptly with the victim rather than pursue a lengthy trial and appeals. Under either scenario, both the plaintiff and the political subdivision may save the time, effort, and expense of a trial and appeal, which could take years.
>
> As the General Assembly envisioned, the determination of immunity could be made prior to investing the time, effort, and expense of the courts, attorneys, parties, and witnesses pursuant to amendments made to R.C. 2744.02(C) and 2501.02." (Emphasis sic.) *Burger v. Cleveland Hts.* (1999), 87 Ohio St.3d 188, 199-200, 718 N.E.2d 912 (Lundberg Stratton, J., dissenting).

*Hubbell*, 2007-Ohio-4839, at ¶ 25-26.

{¶ 34} We reject the City's implicit suggestion that the issue of political-subdivision immunity *must* be resolved prior to trial. Nothing in R.C. Ch. 2744 suggests as much. Neither do Ohio Supreme Court opinions nor decisions from our district. Indeed, in upholding the trial court's denial of leave in *Murgu*, 2018-Ohio-4643 (8th Dist.), we quoted the trial court's conclusion that the affirmative defense of immunity "will be addressed at trial based on evidence presented." *Murgu* at ¶ 5. In *Hopkins*, 2024-Ohio-2265 (8th Dist.), this court likewise upheld the denial of leave and remanded the case for further proceedings.

{¶ 35} In *Hopkins*, this court held "that the trial court's effective denial of GCRTA's June 15, 2023 motion for enlargement of time [to file its motion for summary judgment] was not so palpably and grossly violative of fact or logic that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Hopkins* at ¶ 28. The trial court noted that GCRTA had failed to timely file its motion for summary judgment despite indicating that little or no additional discovery would be required in the refiled action, and that it failed to seek a trial continuance. *Id.* at ¶ 22-24. The *Hopkins* Court also noted that the plaintiff's summary-judgment-opposition deadline would be later than the trial date and the trial court did not abuse its discretion in denying GCRTA's motion to shorten the plaintiff's response time. In its blended analysis of these overlapping issues, the court wrote that "the trial court considered Hopkins's due process right of a fair opportunity to respond to GCRTA's motion for summary judgment when it denied GCRTA's motion for an enlargement of time to file its motion." *Id.* at ¶ 27.

{¶ 36} While several facts in *Hopkins* contrast with the present case, "consideration of this case's procedural timetable" is still "critical to our analysis." *Id*. at ¶ 22. Here, the parties participated in a telephonic-case-management conference on October 31, 2024. The docket is silent on whether they conferred in advance in compliance with Civ.R. 26(F). In any event, no Civ.R. 26(F) report appears on the docket. At that juncture, the City had already asserted political-subdivision immunity as an affirmative defense in its answer to the complaint. As discussed in the procedural history above, a Civ.R. 26(F) report may include a proposed timetable for filing motions. *See* Civ.R. 26(F)(3), referencing Civ.R. 16(B) and (C). Again, nothing in the record indicates that the parties filed a Civ.R. 26(F) report. As a result, there is no record indicating that any party requested a dispositive-motion deadline on any issue, including political-subdivision immunity.

{¶ 37} The City contends in its brief that "[a]t the outset, the trial court indicated it would not entertain motions for summary judgment in this case." (City's brief at p. 8.) The City does not point to any journal entries supporting that statement. It does not appear in the trial court's October 10, 2024 entry scheduling the case-management conference. It does not appear in the trial court's October 31, 2024 standing order memorializing the case-management conference. It does not appear in the additional trial order docketed November 4, 2024.

{¶ 38} We have found nothing in the record supporting the City's implication that it requested a dispositive-motion deadline at an earlier date and that the trial court denied it. We also have found nothing indicating the trial court, without

prompting, announced that it would not entertain dispositive motions. While the City's answer contained an affirmative defense of political-subdivision immunity, nothing in the record indicates the City took any active steps toward such a resolution until it filed its motion for leave on February 21, 2025, *after* the trial court had denied the parties' joint motion to extend discovery and to continue the final pretrial and trial dates.

{¶ 39} Nevertheless, and despite our firm conviction that the City would have been better served by developing a record with respect to the trial court's purported hostility to dispositive motion practice, we find that the trial court abused its discretion in denying the City's motion for leave to file a motion for summary judgment. In that regard, we find both *Hopkins*, 2024-Ohio-2265 (8th Dist.), and *Murgu*, 2018-Ohio-4643 (8th Dist.), distinguishable. In *Hopkins*, this court cited *Supportive Solutions, L.L.C.*, 2013-Ohio-2410, for the proposition "that a trial court abuses its discretion when it denies a motion for leave without justification, where the affirmative defense was tendered timely, in good faith, and the opposing party would not be prejudiced." *Hopkins* at ¶ 27. In that case, as discussed above, GCRTA had represented to the court that little to no additional discovery would be required to support its political-subdivision-immunity motion, it "never filed a motion for leave to plead its untimely motion for summary judgment," and it had not moved for a trial continuance, instead opting to request that the trial court shorten the plaintiff's summary-judgment-response time to keep the agreed-upon trial date.

*Hopkins* at ¶ 27.  The *Hopkins* Court noted the trial court's consideration of the plaintiff's due-process right to respond.  *Id*.

{¶ 40} In this case, in contrast to *Hopkins*, nothing in the record indicates the City had represented to the trial court that little to no discovery was required to support its immunity defense.  Moreover, the City, unlike GCRTA, did not request that the trial court shorten the dispositive-motion-opposition deadline in order to keep the trial date.  In fact, just over two weeks prior to the City filing its motion for leave, all parties had joined in a motion to amend the case-management schedule to extend the discovery deadlines, the final pretrial, and the trial.  This contrasts with *Hopkins*, where "GCRTA never . . . asked for a continuance of the agreed-upon trial date."  *Id*. at ¶ 27.  Furthermore, while the trial court denied the motion to amend the scheduling order in this case, its denial was equivocal.  The trial court's journal entry indicated the motion was "denied at this time," but also that "the court will discuss with counsel at the final pretrial."  The trial court thereby indicated that moving the final pretrial and trial, as well as permitting additional discovery, remained options that might be explored at the final pretrial.

{¶ 41} When the City filed its motion for leave, therefore, extending the litigation timeline was still a possibility pursuant to the trial court's latest order. Furthermore, while the City's motion for leave was silent as to a due date for a summary-judgment motion, and any such filing would most likely require moving the trial date, this is consistent with the parties' very recent *joint* efforts to extend the entire litigation schedule; it would merely add dispositive motion practice into

the mix. At the time the trial court denied the City's motion for leave, the case had been pending for five months and 12 days, less than one quarter of the Ohio Supreme Court's 24-month-time guideline for the resolution of cases classified as "other torts." Given that the parties had jointly expressed their amenability to extending the entire litigation schedule, granting the City's motion for leave would not have unfairly prejudiced plaintiff-appellee or deprived him of his "due process right of a fair opportunity to respond[.]" *Id.* at ¶ 27.

{¶ 42} Distinctions between this case and *Murgu*, 2018-Ohio-4643 (8th Dist.), are even more pronounced. In *Murgu*, Lakewood had previously filed a motion for summary judgment and failed to include an argument regarding its immunity defense. This court held that by not raising the immunity issue in its original summary-judgment motion, Lakewood had waived the right to argue it. *Id.* at ¶ 13. While the trial court had the discretion to grant Lakewood leave "to present an argument . . . that they did not assert in their [original] motion," *id.*, the *Murgu* Court held that Lakewood had failed to show that in this procedural context, the trial court's decision to deny leave "was so egregious and grossly violative of fact, or logic, or that the trial court's attitude was unreasonable, arbitrary, or unconscionable," that it warranted reversal. *Id.* at ¶ 17.

{¶ 43} From a procedural standpoint, the present action does not involve a situation like *Murgu*, where the political subdivision sat on its rights by filing a dispositive motion that failed to raise immunity arguments. It likewise does not resemble *Hopkins*, 2024-Ohio-2265 (8th Dist.), a refiled case in which GCRTA

explicitly stated that little additional discovery was required but still failed to file a dispositive motion in a timely fashion, failed to request leave to file its untimely motion, and failed to seek a trial continuance. In the present action, all parties joined in a motion stating that more discovery needed to be done. All parties requested not only additional time for discovery, but for first continuances of the final pretrial and trial dates. No party would have been prejudiced by granting the City's request for leave to file a dispositive motion on immunity, even if it meant moving the trial date. Finally, the policies underlying the political-subdivision-immunity statute would have been served by granting the motion. In this unique context, where the case was fewer than six months old, discovery was ongoing, the trial date had not previously been continued, and all parties were amenable to a trial continuance, we find that the trial court's denial of the City's motion for leave was an abuse of discretion.

{¶ 44} The trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EMANUELLA D. GROVES, P.J., CONCURS;
ANITA LASTER MAYS, J., CONCURS (WITH SEPARATE OPINION)


ANITA LASTER MAYS, J., CONCURRING:

{¶ 45} I fully concur with the majority's judgment. I write separately to emphasize that, although trial courts possess broad discretion to control their dockets, that discretion must be exercised in a manner that does not impair a party's statutory right to raise and litigate an immunity defense under R.C. 2744.02(C).

{¶ 46} This case exemplifies the very scenario the dissent in *Hopkins* warned against: namely, the trial court's procedural rulings operating, in effect, as a substantive denial of political-subdivision immunity. *See Hopkins v. Greater Cleveland Regional Transit Auth.,* 2024-Ohio-2265, ¶ 205 (8th Dist.) (dissent).

{¶ 47} A key distinction in the procedural history between *Hopkins* and the present case warrants emphasis. In *Hopkins*, the appellant's procedural missteps resulted in the forfeiture of an opportunity to litigate its immunity defense. In contrast, in the present case, it was the trial court's collective actions that deprived appellant of that opportunity. These included utilizing an accelerated calendar, failing to set dispositive-motion deadlines when political-subdivision immunity had

been raised; and denying both the motions for leave to file a motion for summary judgment and an agreed motion for continuance, even though discovery was still ongoing.

{¶ 48} I concur in the judgment and write separately because this distinction is significant. It transforms the denial of leave from a permissible exercise of docket management authority into an abuse of discretion that effectively nullifies a party's right to a timely adjudication of political-subdivision immunity.